UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re                                            Chapter 11

      Seacrest Equities LLC                    Case no.   16-43956

                   Debtor.
-----------------------------------------------------------x


## AMENDED PLAN OF REORGANIZATION


Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Fascimile: (212) 644-0544


ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

Seacrest Equities LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.      "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

2.      "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

4.      "Allowed Claim" shall mean a Claim: (a) to the extent that a proof of claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

2

5.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an Allowed Claim.

6.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent it is an Allowed Claim.

7.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

8.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11. U.S.C. § 101 et. seq.

9.      "Bankruptcy Court" shall mean the Court as defined below.

10.     "Bar Date" shall mean December 1, 2016.

11.     "Cash" shall mean all cash and cash equivalents which evidence immediately available funds in United States dollars.

12.     "Claim" shall mean a right to payment as set forth in § 101(5) of the Bankruptcy Code.

13.     "Claimant" shall mean the holder of a Claim.

14.     "Confirmation Date" shall mean the date of the entry of the Confirmation Order.

15.     "Confirmation Hearing" shall mean the hearing pursuant to the Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed confirmation of the Plan.

16.     "Confirmation Order" shall mean the order of the Court confirming the Plan.

3

17.     "Court" shall mean the United States Bankruptcy Court for the EASTERN District of New York.

18.     "Creditor" shall mean any entity that holds a Claim against the Debtor.

19.     "Debtor" shall mean Seacrest Equities LLC

20.     "Disputed Claim" shall mean the whole or any portion of any claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

21.     "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable.

22.     "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

23.     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

24.     "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

25.     "Interest" shall mean an existing ownership interest in the Debtor.

26.     "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

27.     "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

28.    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

29.    "Petition Date" shall mean September 1, 2016.

30.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

31.    "Property" shall mean 12 Seacrest Drive Huntington, New York.

32.    "Proponent" shall mean Seacrest Equities LLC.

33.    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

34.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

35.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

36.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

37.    Classification – Suffolk County real estate tax Liens.  Claims total approximately $0.00

38.    Treatment -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

39.    Voting -- Unimpaired and deemed to have accepted the Plan.

### Class 2

1.    **Classification** – Grasmere Notebuyer LLC. Claim totals approximately $1,500,000.

2.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 2 Claims after payment of Class 1 Claims.  If less than $25,000 is available for Unsecured Claims after payment of senior claims under the Plan, the Class 2 Claimant shall escrow $25,000 with Debtor's counsel to be disbursed pro-rata to Holders of Unsecured Claims as set forth in the Class 5 treatment section of the Plan. The Claimant shall have no Class 5 deficiency claim under the Plan.

3.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 3

4.    **Classification** – JP Morgan Chase.  Mortgage claims totals approximately $1,850,000

5.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 3 Claims after payment of Class 1 and 2 Claims. The Claimant shall have a Class 8 Unsecured Claim for the unpaid amount of its Secured Claim.

6.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## Class 4

7.    **Classification** –    Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

8.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

9.    **Voting --** Unimpaired and deemed to have accepted the Plan.

## Class 5

10.    **Classification** – General Unsecured Claims.  Claims total approximately $1,191,529, including $1,083,429 of wholly under-secured lien creditors, and $108,500 of general unsecured claims.

11.    **Treatment** – Payment of available cash up to Allowed Amount of Class 8 Claims, plus interest at the Legal Rate after payment of administration claims, unclassified tax claims, Class 1, 2, 3, and 4 Claims. If less than $25,000 is available for Class 8 Claims after payment of senior claims as provided for in the preceding sentence, then each Holder of a General Unsecured Claim shall be paid its pro-rata share of a $25,000 distribution fund.  To the extent necessary, such fund will be funded by the Class 2 Claimant.  The Class 2 Claimant and

7

Randall Funding as Class 4 Claimant, shall not be entitled to a Class 5 Claim but shall retain

their rights to vote as a class 8 Claimant.

12.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**Class 6**

13.    **Classification** – Interests Holders.

14.    **Treatment** – Payment of available cash after payment of administration

claims, unclassified tax claims, Class 1, 2, 3, 4, and 5 Claims.

15.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

**UNCLASSIFIED PRIORITY TAX CLAIMS**

16.    Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total

approximately 0. The treatment of such Claims, if any, shall be payment in full in Cash of the

Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues

from the Petition Date through the date of payment.

**ADMINISTRATION CLAIMS**

17.    Allowed Administrative Expenses shall be paid in full in Cash on the

Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent

that the holder of an Allowed Administrative Expense agrees to a different treatment; provided

however, that Allowed Administrative Expenses representing obligations incurred in the

ordinary course of business or assumed by the Debtor shall be Paid in full or performed by the

Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular

transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective

Date.  United States Trustee fees will be paid, and operating reports will be filed as they come

due by the Debtor.

## MEANS FOR IMPLEMENTATION

18.    **Source of Funds** – Effective Date payments under the Plan will be paid

from the proceeds of the sale of the Property as described in Exhibit A to the Plan, and from an

additional amounts to be contributed by the Class 2 Claimant to the extent necessary.  The

transfer of the Property under the Plan shall be free and clear of all liens, claims and

encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and

to be disbursed under the Plan.

19.    **Sale Approval** -- As part of the sale under the Plan, and in order to ensure

consummation of the Plan, the Plan requires that  the Confirmation Order contain the following

findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and

reasonable, (b) that the sale, and the purchaser's purchase, of the Property pursuant to the Plan, is

non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the

transfer of the Property to the purchaser represents an arm's-length transaction and was

negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property,

is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full

protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not

controlled by an agreement among potential purchasers, (f) that no cause of action exists against

the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code

§ 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against

the Purchaser are hereby released, waived and discharged.

20.  **Release of Liens** -- Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

21.  **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

22.  **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly

preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

23.    **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

24.    **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

25.    Preservation of Claims -- All rights pursuant to Sections 502, 544, 545 and 546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be preserved for the benefit of the Debtor's estate.

## DISTRIBUTIONS TO CREDITORS

26.    The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to

particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date on and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

27.     All unexpired leases and executory contracts shall be rejected under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

28.     Retention of Jurisdiction.  The Court shall have jurisdiction over all matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not limited to, proceedings:  (a) to consider any modification of the Plan under section 1127 of the Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against

the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear,

determine and enforce all Claims and causes of action which may exist on behalf of the Debtor

or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate

to recover assets pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all

requests for compensation and/or reimbursement of expenses which may be made; (e) to value

assets of the Estate; (f) to enforce the Confirmation Order, the final decree, and all injunctions

therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any

defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

(h) to determine all questions and disputes regarding title to the assets of the Debtor; and (i) to

re-examine Claims which may have been allowed for purposes of voting, and to determine

objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

29.     Headings.  The headings in the Plan are for convenience of reference only

and shall not limit or otherwise affect the meaning of the Plan.

30.     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated

herein for purposes of calculating the dates set forth herein.

31.     Other Actions.  Nothing contained herein shall prevent the Debtor, Interest

Holders, or Creditors from taking such actions as may be necessary to consummate the Plan,

although such actions may not specifically be provided for within the Plan.

32.     Modification of Plan.  The Debtor may seek amendments or modifications

to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the

Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or

omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such

manner as may be necessary to carry out the purposes and intent of the Plan

## INJUNCTION AND PROPERTY OF THE ESTATE

33.     Injunction.  The confirmation of this Plan shall constitute an injunction of

the Court against the commencement or continuation of any action, the employment of process,

or any act, to collect, recover or offset from the Debtor or its property or properties, any

obligation or debt except pursuant to the terms of the Plan.

## CLOSING THE CASE

34.     Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
        November 4, 2016

                                    Seacrest Equities LLC


                        By:     s/ Lorenzo Deluca



                                BACKENROTH FRANKEL & KRINSKY, LLP
                                Attorneys for Debtor


                        By:     s/Mark A. Frankel
                                800 Third Avenue
                                New York, New York 10022
                                (212) 593-1100

## EXHIBIT A TO PLAN

## SALE AND BID PROCEDURES

Set forth below are the bid procedures (the "**Bidding Procedures**") to be employed in connection with the sale of Real Property located at 12 Seacrest Drive Huntington, New York (the "**Real Property**") owned by Seacrest Equities LLC (the "**Debtor**") pursuant to the Disclosure Statement for her Chapter 11 Plan ("**Plan**") in the Debtor's chapter 11 case pending in the United States Bankruptcy Court for the EASTERN District of New York (the "**Bankruptcy Court**"), case number  16-43956 (the "**Bankruptcy Case**").

The Real Property shall be sold to _____ ("**Purchaser**") for a purchase price totaling $_____.  The Sale is subject to (i) approval by the Bankruptcy Court; (ii) entry of an order, providing, *inter alia,*  that Purchaser is a good faith purchaser; and that the sale of the Real Property to Purchaser shall be free and clear of all liens, claims, encumbrances and interests (the "**Stalking Horse Offer**").  The Stalking Horse Offer is subject to competitive bidding as set forth herein.

## The Bidding Procedures

1.    **Proposed Stalking Horse Offer Subject to Higher and Better Offers**.

The sale of the Real Property and the Stalking Horse Offer is subject to higher and better offers, and, as such, Purchaser will serve as the "stalking-horse" bidder for the Real Property.

1.    **Provisions Governing Qualifications of Bidders**. To participate in the Bidding Process, prior to the Bid Deadline (defined below), to be deemed a Qualified Bidder a potential bidder ("**Potential Bidder**") must deliver the following to the Notice Parties (as defined below):

   (i)    a written disclosure of the identity of each entity that will bid for the Real Property or otherwise participate in such bid;

   (ii)    deliver documents necessary to reasonably permit the Debtor and the Court , if necessary, to determine that the Potential Bidder is reasonably likely to submit a *bona fide* offer and to be able, financially and legally, to consummate a sale if selected as a Successful Bidder.

2.    **Provisions Governing Qualified Bids**. A bid submitted will be a

Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the

following (a "**Qualified Bid**"):

(i)    it is accompanied by a signed copy of these Bidding Procedures;

(ii)    it states that the Qualified Bidder offers to purchase the Real Property upon the terms and conditions that are no less favorable to the Debtor than those set forth in the Stalking Horse Offer;

(iii)    it includes a signed writing that the bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable.

(iv)    it states that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

(iv)    it includes a duly authorized and executed copy of the Form Asset Purchase Agreement, annexed hereto as **Exhibit 1** including the purchase price for the Real Property expressed in U.S. Dollars (the "Purchase Price") and which shall be for a minimum purchase price of $_____ (the "**Minimum Overbid**"), with all exhibits and schedules thereto, with copies marked to show any amendments and modifications to the Form Asset Purchase Agreement ("Marked Agreement") and the proposed orders to approve the sale by the Bankruptcy Court;[1]

(v)    it is accompanied by a good faith deposit by wire transfer or bank check payable to the order of the Debtor's Attorney Trust Account equal to ten percent (10%) of the Minimum Overbid (the "**Deposit**");

(vi)    it is received prior to the Bid Deadline;

(vii)    it states the Qualified Bidder is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party including the Debtor, and its respective agents and representatives regarding the

---

[1] While bidders may suggest modifications to the Form Agreement, any such modifications deemed to increase the obligations or burdens upon the Debtor's estate (such as additional conditions) will be factored into the consideration of whether to accept such bid. Bidders should note that the Form Agreement provides, or shall provide, for rejection of any and all of the Debtor's executory contracts, except for tenant leases, at Confirmation. Except for tenant leases, the Debtor does not appear to be a party to any other executory contracts.

Real Property, the Bid Procedures or any information provided in connection therewith;

(viii)  it acknowledges the bid does not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment;

(ix)  it states that the bid is not conditioned on obtaining financing or any internal approval, on the outcome or review of due diligence, environmental, or any other contingencies not otherwise contained in the Purchase Agreement;

(x)  it states that the sale of the Real Property is subject to confirmation of the Plan.

3.  **Bid Deadline.**  The deadline for submitting bids shall be

_____, 2016 at 4:00 p.m. (the "**Bid Deadline**").  Prior to the Bid Deadline, a

bidder that desires to make an offer, solicitation or proposal (a "**Bid**") must deliver written

copies of its Bid to counsel for the Debtor: Backenroth Frankel & Krinsky, LLP, attn. Mark

Frankel, 800 Third Avenue, New York, NY 10022 (Email: mfrankel@bfklaw.com) (the "**Notice**

**Party**").

4.  **The Auction Process.**  If a Qualified Bid is received, an auction sale

(the "**Auction**") will be conducted at _____, on _____, **2016**

**at ___:00.**  Counsel to the Debtor shall confirm to all Qualified Bidders the time and place of

the Auction and notify such bidders of the material terms which the Debtor, believes is the

highest, best and otherwise financially superior offer for the Real Property, as determined by the

Debtor (the "**Opening Bid**").  If, however, no Qualified Bid is received, then the Auction will

not be held, and the Stalking Horse Offer shall be deemed to be the Successful Bid, subject to

Bankruptcy Court approval. The Auction shall run under the following procedures:

(i).  Participation at Auction.  Attendance at the Auction shall be limited to the Debtor and its representatives, and any Qualified Bidder, or its duly authorized representative, (and the legal and financial advisers to each of the foregoing).

(ii)  No Collusion.  Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion regarding the bidding or the proposed Sale.

(iii)     at least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Debtor's counsel whether it intends to attend the Auction; provided that if a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction. At least one (1) Business Day prior to the Auction, the Debtor's counsel will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtor believes, in its reasonable discretion, is the highest or otherwise best offer (the "**Starting Bid**")to all Qualified Bidders;

(iv)     all Qualified Bidders who have timely submitted Qualified Bids will may be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

(v)     bidding at the Auction will begin with the highest Minimum Overbid received and will continue in bidding increments (each a "**Subsequent Bid**") of at least an additional $10,000.00 above the prior bid, or in any lower amount the Debtor deems reasonable. After the first round of bidding and between each subsequent round of bidding, Debtor's counsel shall announce the bid (and the value of such bid) that it believes to be the highest or otherwise better offer (the "**Leading Bid**"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid knowing the Leading Bid. Except as specifically set forth herein, to evaluate the value of the consideration provided by Subsequent Bids, the Debtor shall give effect to any additional costs which may be imposed on the Debtor, including but not limited to the cost of broker fees and/or commissions.

(vi)     The Debtor shall direct and preside over the Auction.  Other than as set forth herein, the Debtor may conduct the Auction in the manner it determines will cause the highest, best or otherwise financially superior offer for the Real Property.

5.     **Selection of Successful Bid**. The Debtor will review and evaluate each

Qualified Bid under the procedures set forth herein and determine which offer is the highest or

best offer from among the Qualified Bidders submitted at Auction (one or more such bids,

collectively the "**Successful Bid**" and the bidder(s) making such bid, collectively, the

"**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the

Successful Bidder and the details of the Successful Bid.

(i)     The determination of the Successful Bid by the Debtor at the conclusion of the Auction shall be final, but shall remain subject to approval by the Bankruptcy Court.

(ii)    Within one (1) day after adjournment of the Auction, the Successful Bidder shall, to the extent necessary, augment its deposit by wire transfer or other immediately available funds such that its deposit continues to equal ten percent (10%) of the highest and best bid and complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made;

(iii)   Within one (1) day after adjournment of the Debtor shall file a notice identifying the Successful Bidder with the Bankruptcy Court;

(iv)    A sale of the Real Property to the Successful Bidder will take place consistent with the Plan pursuant to the terms of the Successful Bid after approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing;

(v)     At the conclusion of the Auction, Debtor's counsel will also announce the second highest and best bid (the "**Back-Up Bidder**").  If the Successful Bidder fails to augment its deposit or consummate the purchase of the Real Property the Back-Up Bidder will be deemed to have submitted the highest and best bid.  If the Successful Bidder closes, the Back-Up Bidder's deposit (plus accrued interest, if any) shall be returned to the Back-Up Bidder. If the Successful Bidder fails to close, the Back-Up Bidder's deposit shall be treated in the manner described below.

(vi)    **Subject to Court Approval.** The Debtor's estate will be deemed to have accepted a bid only when the bid has been approved by the Court.  If the Successful Bidder or the Back-Up Bidder shall fail to consummate an approved Sale because of a breach or failure to perform by such Successful Bidder (or Back-Up Bidder, as the case may be), the Debtor's estate shall retain such Successful Bidder's (or Back-Up Bidder's, as the case may be) Deposit, in addition to other additional remedies available to the Debtor under applicable law. The Debtor shall credit the Good Faith Deposit of such Successful Bidder or the Back-Up Bidder towards the purchase price.

6.      **Escrow of Bid Deposits.** Within two (2) business days after entry of

the Sale Order approving the sale of the Real Property, Deposits shall be returned to all

bidders except the Successful Bidder and Back Up Bidder.  The deposit of the Successful Bidder shall be applied to the purchase price at closing.

7.      **Deposit Forfeit.** The Deposit will be forfeited as liquidated damages and the Successful Bidder, held liable for compensatory damages if the Successful Bidder fails to close by reason of its breach of the Purchase Agreement to be signed by the Successful Bidder, subject to the terms of the Purchase Agreement.

8.      **Hearing.** The Bankruptcy Court shall conduct a hearing to confirm to confirm the results of the Auction at a hearing to be held on _____, 2016, at ___ .m., in the Honorable _____'s Courtroom, United States Bankruptcy Court, Conrad B Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201

9.      **Closing.** The closing of the sale must occur within fifteen (15) days of the Bankruptcy Court order approving the Sale, unless agreed to in writing by the Debtor, or as otherwise provided by Order of the Court.

10.      **Objection Deadline to the proposed Sale of Real Property.** Any party that wishes to object to the proposed sale of Real Property under the Plan (**"Sale Objection"**), shall be required to file an objection by 12:00 p.m. **(prevailing Eastern Time) on** _____**, 2016** (the "Sale **Objection Deadline**") and serve a copy of the Sale Objection, to be received by the Sale Objection Deadline, upon (i) Backenroth Frankel & Krinsky, LLP, attn. Mark Frankel, 800 Third Avenue, New York, NY 10022 (Email: mfrankel@bfklaw.com) (ii) the Office of the United States Trustee for the Eastern District of New York; and (iii) all parties filing an entry of appearance and request for notices under Fed. R. Bankr. P. 2002.  Objections to the Auction or the selection of the highest bidder or otherwise best bid shall be heard at the Sale Hearing.

20

The undersigned Bidder acknowledges that such Bidder has read and understands a copy of these Bidding Procedures.

_____

Name of Bidder


_____

Signature of Bidder


_____

Title of Bidder (for Bidder other than individual)

## <u>CONTRACT OF SALE</u>

AGREEMENT made on the _____ day of _____, 2016, between Seacrest Equities

LLC ("Seller", also referred to as "Debtor") and _____ ("Purchaser"),

having an address at _____.

## <u>W I TN E S S E T H:</u>

11.     Purchase and Sale. Seller agrees to sell and convey to Purchaser, and

Purchaser agrees to purchase from Seller, upon the terms and conditions hereinafter contained,

the premises known as and by the street address 12 Seacrest Drive Huntington, New York (the

"Premises"), together with any buildings and improvements  thereon erected.

12.     Title of Seller. This sale includes all right, title and interest, if any, of

Seller in and to any land lying in the bed of any street, road or avenue, opened or proposed, in

front of or adjoining the Premises, to the center line thereof, and all right, title and interest of

Seller in and to any award made or to be made in lieu thereof and in and to any unpaid award for

damages to the Premises by reason of change of grade of any street; Seller shall execute and

deliver to Purchaser, on the closing  of title (the "Closing") on request of Purchaser, all proper

instruments for the conveyance of such title and the assignment and collection of any such

award.

13.     Acceptable Title.  Seller shall give, and Purchaser shall accept, such title

as shown on the attached title report.

14.     Purchase Price.  Purchaser shall pay to Seller for the Premises the sum of

($_____) (hereinafter, the "Purchase Price"). Purchaser shall pay the Purchase

Price as follows:

(a) _____ ($_____) Dollars upon the execution and delivery of this Agreement, by wire transfer or Purchaser's check payable to the order of Backenroth Frankel & Krinsky, LLP, as attorneys, who shall deposit same and hold the proceeds pending the closing of this sale, the cancellation of the Contract, or the order of the Bankruptcy Court for the Eastern District of New York, subject to collection and drawn on a bank which is a member of the New York Clearinghouse Association, the receipt whereof is hereby acknowledged (said sum and any interest thereon, hereinafter collectively the "Down Payment").

(b)  _____ ($_____), representing the balance of the Purchase Price, by wire transfer of immediately available funds to Backenroth Frankel & Krinsky, LLP, as attorneys, or bank check drawn on a bank which is a member of New York Clearinghouse Association, payable to the direct order of Wayne Greenwald, as Disbursing Agent to be paid upon the Closing.

15.    Claims.  Backenroth Frankel & Krinsky, LLP hereby agrees to deposit the cash sale proceeds in an escrow account, to be administered Backenroth Frankel & Krinsky, LLP, as attorneys, sufficient funds to pay all creditors, whether secured, administrative, priority or unsecured, the allowed amounts of their claims, with applicable interest.

16.    Transfer Tax.  The transaction herein is a transfer pursuant to and in contemplation of the Seller's Chapter 11 Plan of Reorganization and, accordingly, shall not be subject to any federal, state, local, municipal or other law imposing a transfer or stamp tax, mortgage tax, or any other law imposing or claiming to impose a transfer or stamp tax, mortgage tax, or any other similar tax in connection with this sale pursuant to section 1146 (a) of the Bankruptcy Code.

17.    Bankruptcy Court Order.  This Contract is subject the entry of a Sale Order approving the Contract under the Seller's Plan of Reorganization. "Sale Order" means an

order of the Bankruptcy Court pursuant to sections 105, 363(b), 363(f) and 365 of the

Bankruptcy Code which order authorizes and approves, inter alia, the sale of the Property to the

Purchaser on the terms and conditions set forth herein, free and clear of all liens claims and

encumbrances pursuant to 11 U.S.C. section 363(f), except  as otherwise set forth herein, and

the assumption by the Purchaser, and assignment by Seller, of the assigned contracts, if any, and

containing a finding that Purchaser has acted in "good faith" within the meaning of section 363

(m) of the Bankruptcy Code. The Sale Order shall be in the form and substance reasonably

acceptable to Purchaser. If said Sale Order is not obtained, then this Contract shall be terminated,

shall be of no further force or effect, the deposit shall be returned to Purchaser, and neither party

shall have any further obligation or liability to the other.

18.    Closing.  The Closing shall take place at the office of Seller's attorneys, or

other mutually acceptable location, within seven (15) days of entry of a Bankruptcy Court order

approving the sale.  Upon receipt of the balance of the Purchase Price, as aforesaid, Seller shall

deliver an executed and acknowledged bargain and sale deed for the Premises in statutory form

for recording, sufficient to convey fee simple title to the Premises free and clear of all

encumbrances except as provided in this Agreement.  For convenience, Seller may omit from the

deed the recital of any or all of the "subject to" clauses herein contained and/or any other title

exceptions, defects or objections which have been waived or consented to by Purchaser pursuant

to and in accordance with this Agreement.  The date on which the Closing shall take place is

hereinafter referred to as the "Closing Date."

19. Broker. The parties agree that no broker brought about this transaction. Purchaser and Seller represents to each other that they did not negotiate with any broker in connection with this transaction. Purchaser and Seller hereby agree to indemnify, defend and hold each other harmless from and against any and all claims, losses, liabilities, costs and expenses (including attorneys' fees and disbursements) resulting from any claim that may be made against either party by any broker, or any other person claiming a commission, fee or other compensation by reason of this transaction, if the same shall arise by, through or on account of any alleged act of Purchaser or Seller or their representatives. The provisions of this paragraph shall survive the Closing, or if the Closing does not occur, the termination of this Agreement

20. Fixtures.

(a) Seller represents and warrants that at the time of the Closing all fixtures attached to the Premises will be owned by Seller. All fixtures attached or appurtenant to or used in connection with the Premises are included in this sale in their "as is" condition as of the date of this Agreement, subject to ordinary wear and tear, casualty and natural deterioration and obsolescence.

(b) No portion of the Purchase Price is attributable to the fixtures and items of personal property included in this sale. Notwithstanding the foregoing, Purchaser agrees to pay any sales tax which may be assessed by any governmental authority in connection with the transfer or conveyance of any such property under this Agreement.

21. Notices. Any demand, request, consent or other notice given or required to be given under this Agreement shall be deemed given only if in writing and sent by personal delivery, reliable overnight courier with evidence of receipt, or by email or facsimile

transmission (if by email and or facsimile with confirmation by one of the other methods of

notice),  addressed as follows:

> To Seller:  To the address first set forth above
> and a copy to:        Backenroth Frankel & Krinsky, LLP,
>                       attn. Mark Frankel,
>                       800 Third Avenue,
>                       New York, NY 10022 (
>                       Email: mfrankel@bfklaw.com)
>
> To Purchaser:
>
>
>  and a copy  to:

Or at such other addresses as the parties may designate to the other by written notice in the

manner herein provided. Any such notices or elections shall be effective at the following times:

(i) upon delivery, if personally delivered; (ii) the first business day after delivery to the

overnight courier; or (iii) the date of transmission if by fax, provided such transmission was

received during business hours on any business day and otherwise on the next occurring

business day.

      22.      Title Affidavit. If a search of the title discloses judgments, bankruptcies or

other returns against other persons having names the same as or similar to that of Seller, Seller

shall on request deliver to Purchaser an affidavit in form acceptable to the Title Insurer showing

that such judgments, bankruptcies or other returns are not against Seller.

23.    Allowance Out of Purchase Price. The amount of any amounts to be paid by Seller as per this Agreement may, at the option of Seller, be allowed to be paid by Purchaser on behalf of Seller out of the balance of the Purchase Price, provided that official bills therefore with interest and penalties thereon computed to such date are furnished by Seller at the Closing.

24.    Survival of Representations. Except as otherwise expressly provided tothe contrary in this Agreement, no representations, warranties, covenants or other obligations of Seller set forth in this Agreement shall survive the Closing, and no action based thereon shall be commenced after the Closing.

25.    Foreign Persons.  At the Closing, Seller shall deliver to Purchaser either (a) an affidavit signed and sworn to under penalties of perjury by Seller stating that Seller is not a foreign person" (as defined in Section 1445 (F)(3) of the Internal Revenue Code of 1986, as amended (the "Code") or (b) a "Qualifying Statement"(as defined in Section 1445 (b)(4) of  the Code).

26.    Seller's Deliveries at Closing.  In  addition to the other items  referred to in  this Agreement, Seller shall deliver any such other documents, instruments and agreements which are necessary or appropriate in order to consummate the transactions contemplated hereby.

27.    Condemnation.  Seller represents and warrants that Seller has no knowledge of pending or contemplated condemnation proceedings affecting the Premises or any part thereof as of the date hereof.

28.    Casualty and Condemnation.  The parties waive the provisions of Section 5-1311 of the General Obligations Law. If, prior to the Closing, all or a material part of the Premises is destroyed, by fire or the elements or by any cause beyond either party's control, without fault of Purchaser or is taken by eminent domain, Purchaser may, by notice to Seller given within ten (10) business days after notice to Purchaser of such destruction or taking, elect to cancel this Agreement. In the event that Purchaser shall so elect, the Down Payment shall be paid to Purchaser and neither party shall have any further rights or obligations hereunder.  Unless this Agreement is so canceled, or if less than a material part of the Premises is damaged by fire or other cause or taken by eminent domain, this Agreement shall remain in full force and effect in which event, Seller shall, on the Closing Date, and upon receipt of the balance of the Purchase Price, pay to Purchaser any sums of money collected by Seller under policies of insurance or as an award for any taking by eminent domain, this Agreement shall remain in full force and effect, in which event, Seller shall, on the Closing Date, and upon receipt of  the balance of the Purchase Price, pay to Purchaser any sums of money collected by Seller under policies of insurance or as an award for any taking by eminent  domain, after deducting any reasonable amount which Seller may have agreed or been obligated to pay for repairs or restoration of the damage, or in obtaining such award, in each case including attorneys' fees and disbursements.  In addition Seller shall assign, transfer and set over to purchaser all of Seller's right, title and interest in and to said policies and any further sums payable thereunder, and all of Seller's right, title and interest in and to any portion of any condemnation award not yet received by Seller. Rent insurance proceeds, if any, shall be apportioned as of the Closing Date. For purposes of this

Agreement, a material part of the Premises shall be deemed to be destroyed if the cost to repair

any casualty shall exceed $250,000.00.

29.     No Modification.  This Agreement may not be modified or terminated

orally or in any manner other than by an agreement in writing signed by all the parties hereto or

their respective successors in interest.

30.     Governing Law. This Agreement and the Schedules annexed hereto (a)

shall be governed by and construed in accordance with the laws of the State of New York and to

the extent applicable, the Federal law of the United States (b) shall be given a fair and reasonable

construction in accordance with the intentions of the parties hereto. For purposes of construction

of this Agreement, provisions which are deleted or crossed out shall be treated as if never

included herein.

31.     No Offer.  This document is not an offer by Seller, and under no

circumstances shall this Agreement have any binding effect upon  Purchaser or Seller unless and

until Purchaser and  Seller shall each have executed the same a delivered executed counterparts

hereof to each other, and Bankruptcy Court approval and order approving this Agreement is

obtained.

32.     Severability. If any provision of this Agreement is invalid or

unenforceable as against any person or under certain circumstances, the remainder of this

Agreement and the applicability of such provision to other persons or circumstances shall not be

affected thereby. Each provision of this Agreement shall be valid and enforceable to the fullest

extent permitted by law.

34. Counterparts. This Agreement may be executed in two or more

counterparts, each of which shall constitute an original but all of which, taken together, shall

constitute but one and the same instrument.

34. No Third Party Beneficiaries.  The warranties, representations, agreements

and undertakings contained herein shall not be deemed to have been made for the benefit of any

person or entity other than the parties hereto.

35. Publicity; Confidentiality. From and after the date hereof and continuing

after the Closing Date, (i) Purchaser shall treat all information disclosed to or otherwise obtained

by Purchaser in connection with its review of the Premises and the transaction in a confidential

manner, and shall not disclose any such information to any third party except as set forth below;

and (ii) neither Purchaser nor Seller shall announce or disclose publicly the terms or provisions

hereof  without the prior written approval of the other party, except as may be required to comply

with orders of the Bankruptcy Court and to obtain Bankruptcy Court approval. Notwithstanding

the foregoing, such disclosure shall be permissible (x) if required by American judicial law, (y)

with respect to any information that shall be or become available to the general public or (z) by

either party to its attorneys, accountants, permitted successors or assigns, lenders, financial

advisors or any other advisor or consultant, provided that such parties are apprised of the

foregoing restrictions and agree in writing to abide by them. Upon any termination of this

Agreement, Purchaser shall cause its employees, contractors and agents to, deliver to Seller all property, documents, written studies and other materials relating to the Premises in such party's possession.

36.    No Waiver. No failure or delay of either party in the exercise of any right given to such party hereunder or the waiver by any party of any condition hereunder for its benefit (unless the time specified herein for exercise of such right, or satisfaction of such condition, has expired) shall constitute a waiver of any other or further right nor shall any single or partial exercise of any right preclude any other or further exercise thereof or any other right. The waiver of any breach hereunder shall not be deemed to be waiver of any other or any subsequent breach hereof.

37.     Successors and Assigns. This Agreement is binding upon, and shall inure to the benefit of the parties and their respective successors and permitted assigns.

38.    Waiver of Right to Trial By Jury.  Both the Purchaser and Seller hereby irrevocably waive all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement.

39.    Court Approval.  It is understood that this transaction and the parties' obligations hereunder are subject to approval by the United States Bankruptcy Court.  At Closing Purchaser shall pay any NYC and NYS transfer taxes if same are due, and all title charges and fees.

40.    It is the specific intent of the parties that this sale is a "net sale" by Seller to Purchaser of all of Seller's right, title and interest in real property commonly known as 12 Seacrest Drive Huntington, New York.

41.    Escrow Provisions. The Down Payment shall be delivered to Backenroth Frankel & Krinsky, LLP ("Escrowee") and shall be held in escrow and not in trust by Escrowee in a non-interest bearing IOLA account. Escrowee shall pay the Down Payment to Purchaser or Seller, as applicable, at the Closing or otherwise in accordance with this Agreement. The parties further agree that:

(a)    Escrowee shall be protected in relying upon the accuracy, acting in reliance upon the contents, and assuming the genuineness, of any notice, demand, certificate, signature, instrument or other document which is given to Escrowee verifying the truth or accuracy of any such notice, demand, certificate, signature, instrument or other document;

(b)    Escrowee shall not be bound in any way by any other contract or understanding between the parties hereto, whether or not Escrowee has knowledge thereof or consents thereto unless such consent is given in writing;

(c)    Escrowee's sole duty and responsibility shall be to hold and disburse the Down Payment in accordance with this Agreement; provided, however, that Escrowee shall have no responsibility for the clearing or collection of any checks comprising any portion of the Down Payment;

(d)    Upon the disbursement of the Down Payment in accordance with this Agreement, Escrowee shall be relieved released from any liability under this Agreement;

(e)    Escrowee is herewith indemnified by Seller and Purchaser against any liabilities, damages, losses, costs or expenses incurred by, or claims or charges made against Escrowee (including attorneys' fees and court costs) by reason of Escrowee's acting or failing to act in connection with any of

the matters contemplated by this Agreement or in carrying out the terms of this Agreement, except as a result of Escrowee's gross negligence or willful misconduct;

(f)     In the event that a dispute shall arise in connection with this Agreement, or as to the rights of any of the parties in and to, or the disposition of, the Down Payment, Escrowee shall have the right to (i) hold and retain all or any part of the Down Payment until such dispute is settled or finally determined by litigation, arbitration or otherwise, or (ii) deposit the Down Payment in an appropriate court of law, or (iii) institute an action in interpleader or other similar action permitted by stakeholders in the State of New York, or (iv) interplead any of the parties in any action or proceeding which may be brought to determine the rights of the parties to all or any part of the Down Payment, following which Escrowee shall thereby and thereafter be relieved and released from any liability or obligation under this Agreement;

(g)     Escrowee shall not have any liability or obligation for loss of all or any portion of the Down Payment by reason of the insolvency or failure of the institution of depository with whom the escrow account is maintained; and

(h)     The parties hereto represent that prior to the negotiation and execution of this Agreement they were advised that Escrowee represents Seller as attorney in connection with this Agreement and the transaction referred to herein and the parties hereto covenant that they shall not object, on the grounds of conflict of interest or otherwise, to Escrowee continuing to act as Seller's attorney in connection with this Agreement and the transaction contemplated herein, or to act as Seller's attorney in connection with any dispute in connection herewith or any other matter, as well as act as Escrowee hereunder.

IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.

SELLER

Seacrest Equities LLC

By: _____
    Name:
    Title:


PURCHASER


_____


By: _____
    Name:
    Title:

ESCROWEE


_____