UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re                                                    Chapter 11

     Seacrest Equities LLC                     Case no.   16-43956

                    Debtor.

-----------------------------------------------------------x

## AMENDED DISCLOSURE STATEMENT

**THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY AFFECT CREDITORS' DECISIONS TO ACCEPT OR REJECT THE PLAN OF REORGANIZATION ANNEXED HERETO AS EXHIBIT A.  ALL CREDITORS ARE URGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY.  ALL CAPITALIZED TERMS CONTAINED IN THIS DISCLOSURE STATEMENT SHALL HAVE THE SAME MEANING AS CAPITALIZED TERMS CONTAINED IN THE PLAN OF REORGANIZATION.**

**COURT APPROVAL OF THE DISCLOSURE STATEMENT DOES NOT CONSTITUTE COURT APPROVAL OF THE TERMS OF THE PLAN.**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Fascimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

1.    The Debtor submits this Disclosure Statement ("Disclosure Statement") for the solicitation of acceptances of its Plan of Reorganization ("Plan") under Chapter 11 of the United States Bankruptcy Code.  A copy of the Plan is attached hereto as <u>Exhibit "A"</u>.  All Creditors are urged to review the Plan, besides reviewing this Disclosure Statement.  <u>All capitalized terms used but not defined shall have the meaning as in the Plan.</u>

2.    This Disclosure Statement is not intended to replace a review and analysis of the Plan.  Rather, it is submitted as a review of the Plan to explain the terms and implications of the Plan.  Every effort has been made to fully explain the aspects of the Plan as it affects all Creditors.  To the extent a Creditor has questions, the Debtor urges you to contact its counsel and every effort will be made to assist you.  THE DEBTOR URGES YOU TO VOTE IN FAVOR OF THE PLAN. THE DEBTOR'S GOAL IS FOR ALL CREDITOR CLASSES TO ACCEPT THE PLAN.  IF ALL CREDITOR CLASSES DO NOT ACCEPT THE PLAN, THE DEBTOR INTENDS TO SEEK CRAMDOWN OF THE PLAN UNDER SECTION 1129(b) OF THE BANKRUPTCY CODE AS MAY BE NECESSARY TO EFFECT CONFIRMATION OF THE PLAN.

3.    On _____, 2016, after notice and a hearing, the Bankruptcy Court entered an order approving this Disclosure Statement as containing information of a kind and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records, to enable Creditors whose votes are being solicited to make an informed judgment whether to accept or reject the Plan.

4. Creditors should read this Disclosure Statement in its entirety prior to voting on the Plan. No solicitation of votes may be made except under this Disclosure Statement. EXCEPT AS SET FORTH IN THIS DISCLOSURE STATEMENT, NO REPRESENTATIONS CONCERNING THE DEBTOR, ITS ASSETS, ITS PAST OR FUTURE OPERATIONS, OR THE PLAN ARE AUTHORIZED, NOR ARE ANY SUCH REPRESENTATIONS TO BE RELIED UPON IN ARRIVING AT A DECISION WITH RESPECT TO THE PLAN. ANY REPRESENTATIONS MADE TO SECURE ACCEPTANCE OR REJECTION OF THE PLAN OTHER THAN AS CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR.

5. THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN SUPPLIED BY THE DEBTOR. THE DEBTOR'S BOOKS AND RECORDS HAVE BEEN USED TO PROVIDE THE INFORMATION CONCERNING THE DEBTOR'S FINANCIAL CONDITION AS SET FORTH IN THIS DISCLOSURE STATEMENT. BASED UPON THE INFORMATION MADE AVAILABLE, DEBTOR'S COUNSEL HAS NO INFORMATION TO INDICATE THAT THE INFORMATION DISCLOSED HEREIN IS INACCURATE. NEITHER THE DEBTOR NOR ITS COUNSEL, HOWEVER, IS ABLE TO STATE DEFINITIVELY THAT THERE IS NO INACCURACY HEREIN OR THAT FUTURE EVENTS MAY NOT RENDER THE INFORMATION CONTAINED HEREIN INACCURATE.

6. After reviewing this Disclosure Statement indicate your vote to accept or to reject the Plan on the enclosed ballot, and return the ballot to counsel for the Debtor to be received by December 28, 2016.

7.      The Bankruptcy Court has entered an Order fixing January 11, 2017, at 2:00 p.m., at the United States Bankruptcy Court, Conrad B Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201, as the date, time and place for the hearing on confirmation of the Plan, and fixing December 28, 2016, as the last date for the filing of any objections to confirmation of the Plan.

## BACKGROUND

8.      On September 1, 2016, the Debtor filed a Chapter 11 petition under Title 11 of the United States Code, 11 U.S.C. 101 et seq. (the "Bankruptcy Code").

9.      The Debtor owns the real property at 12 Seacrest Drive Huntington, New York.

10.     The Property is encumbered by $4,333,429 of liens and judgments. Based upon a recent appraisal, the property value is $1,500,000.

11.     Lorenzo Deluca, the Debtor's managing member, first became interested when he arranged for entities he partly owns to purchase liens.  Grasmere Notebuyer LLC purchased a $1,500,000 purchase money mortgage and Randall Funding, LLC, another entity he partly owns, bought an $830,000 judgment lien.

12.     The Property was in foreclosure at that time, and he intended to redeem the Property by paying the second mortgagee JP Morgan Chase a negotiated amount, and taking an assignment of its mortgage as well.

13.     That transaction was delayed because the JP Morgan Chase judgment of foreclosure and sale is defective.  For example, (a) judgment was granted based upon a Fairmont

4

Funding mortgage assigned to JP Morgan Chase although the Suffolk County real estate records show a prior satisfaction, (b) two internally inconsistent assignments of the loan documents were issued on the same day and (c) the judgment amount was based upon a referee's report which appears to lack an evidentiary basis, and was submitted with no notice to other lien holder entities.

14.    To correct these defects and effectuate the Property redemption, Randall Funding LLC made a motion to reconsider and amend the foreclosure judgment and to expunge the mortgage satisfaction from the real estate records and to recalculate the amount due.

15.    Upon reading the motion, the Suffolk County Supreme Court promptly entered an order enjoining the sale, but resolution of the underlying dispute has dragged on for almost a year with no end in sight.  In the meantime, interest is accruing, property taxes are accruing and carrying costs must be covered, and the Property condition is deteriorating.

16.    Under New York law, the Property can't be sold in foreclosure until these issues are resolved.

17.    Under the Bankruptcy Code, however, the Property can be sold first and distribution of the proceeds determined next.

18.    The prior owner of the Property is Patricia Kveton Cattani, who had lived there for many years with her husband. She has been unwell for several years. She and her husband wanted to move to Florida and did not want the responsibility of dealing with the Property and the legal complications arising from the foreclosure.

19.    Randall Funding, formed the Debtor with Ms. Kveton Cattani in May 2015. She contributed the Property to the Debtor and agreed to pay certain upkeep expenses, in

5

exchange for a 49% interest in the Debtor. Randall funding agreed to arrange for loans to pay real estate taxes, legal expenses and certain other upkeep expenses in exchange for a 51% interest in the Debtor. If the Property was sold before October 2015 and the net proceeds to Randall Funding exceeded $600,000, Ms. Kvelton Cattani would also be entitled to up to $200,000 of the surplus.

20.    The Supreme Court process hardly moved since then. Ms. Kvelton Cattani and her husband moved to Florida. The Property is accruing expenses in excess of $5000 per month, not including debt service. The Property cannot be rented in its current condition.  A sale in the Bankruptcy Court is the most feasible option.

21.    Secured claims asserted against the Property total $4,433,429.  JP Morgan Chase asserts a second mortgage claim totaling $1,850,000.  Grasmere Notebuyer, LLC asserts a first mortgage claim totaling $1,500,000, Randall Funding asserts a judgment claim totaling $830,000. Costello Shea & Gaffney, a law firm retained by the prior Property owner has a $250,000 judgment claim against the Property, and American Pump Center holds a $3,429 mechanics lien.

22.    The Debtor estimates that unsecured claims are asserted in the amount of $1,191,529, including $1,083,429 of wholly under-secured lien creditors, and $108,500 of general unsecured claims including $100,000 due to Do Young Kim, who loaned the Debtor funds for legal fees and to cover Property expenses and $8,500 due to the Lloyd Harbor Seacrest Estates Homeowners Association.

23.    To emerge from bankruptcy, the Debtor intends to retain a broker and auction the Property under the Plan.

24.    In the meantime, the Property is vacant and Randall Funding is subsidizing day to day expenses as a capital contribution to the Debtor.

## DEBTOR'S PLAN OF REORGANIZATION

## CLASSIFICATION AND TREATMENT OF CLAIMS

## Class 1

25.    Classification – Suffolk County real estate tax Liens.  Claims total approximately $0.00

26.    Treatment -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

27.    Voting -- Unimpaired and deemed to have accepted the Plan.

## Class 2

28.    **Classification** – Grasmere Notebuyer LLC. Claim totals approximately $1,500,000.

29.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 2 Claims after payment of Class 1 Claims.  If less than $25,000 is available for Unsecured Claims after payment of senior claims under the Plan, the Class 2 Claimant shall escrow $25,000 with Debtor's counsel to be disbursed pro-rata to Holders of Unsecured Claims as set forth in the Class 5 treatment section of the Plan. The Claimant shall have no Class 5 deficiency claim under the Plan.

30.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

7

## Class 3

31.     **Classification** – JP Morgan Chase.  Mortgage claims totals approximately $1,850,000

32.     **Treatment** – Payment of available Cash up to Allowed Amount of Class 3 Claims after payment of Class 1 and 2 Claims. The Claimant shall have a Class 8 Unsecured Claim for the unpaid amount of its Secured Claim.

33.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

## Class 4

34.     **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

35.     **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

36.     **Voting --** Unimpaired and deemed to have accepted the Plan.

## Class 5

37.     **Classification** – General Unsecured Claims.  Claims total approximately $1,191,529, including $1,083,429 of wholly under-secured lien creditors, and $108,500 of general unsecured claims.

38.     **Treatment** – Payment of available cash up to Allowed Amount of Class 8 Claims, plus interest at the Legal Rate after payment of administration claims, unclassified tax claims, Class 1, 2, 3, and 4 Claims. If less than $25,000 is available for Class 8 Claims after

8

payment of senior claims as provided for in the preceding sentence, then each Holder of a General Unsecured Claim shall be paid its pro-rata share of a $25,000 distribution fund. To the extent necessary, such fund will be funded by the Class 2 Claimant. The Class 2 Claimant and Randall Funding as Class 4 Claimant, shall not be entitled to a Class 5 Claim but shall retain their rights to vote as a class 8 Claimant.

39.   **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 6

40.   **Classification** – Interests Holders.

41.   **Treatment** – Payment of available cash after payment of administration claims, unclassified tax claims, Class 1, 2, 3, 4, and 5 Claims.

42.   **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### UNCLASSIFIED PRIORITY TAX CLAIMS

43.   Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0. The treatment of such Claims, if any, shall be payment in full in Cash of the Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

### ADMINISTRATIVE EXPENSES

44.   Allowed Administrative Expenses shall be paid in full, in cash on the Effective Date, or the date such Administrative Expense becomes Allowed or as soon as practicable thereafter, except if the holder of an Allowed Administrative Expense agrees to a different treatment; provided, however, that Allowed Administrative Expenses representing

obligations in the ordinary course of business or assumed by the Debtor shall be paid in full or performed by the Debtor in the ordinary course of business or under the terms and conditions of the particular transaction. Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective Date.  United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor..

## MEANS FOR IMPLEMENTATION

45.    **Source of Funds** – Effective Date payments under the Plan will be paid from the proceeds of the sale of the Property as described in Exhibit A to the Plan, and from an additional amounts to be contributed by the Class 2 Claimant to the extent necessary.  The transfer of the Property under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan.

46.    **Sale Approval** -- As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the Confirmation Order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against

the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code

§ 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against

the Purchaser are hereby released, waived and discharged.

47.    **Release of Liens** -- Except as otherwise provided for in the Plan, (a) each

holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any

and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or

such Lien shall automatically, and without further action by the Debtor be deemed released, and

(y) execute such documents and instruments as the Debtor requests to evidence such Claim

holder's release of such property or Lien.

48.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a)

the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of

any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of

any lease or sublease or the making or delivery of any deed or other instrument of transfer under,

pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any

deeds, bills of sale or assignments executed in connection with the purchase of the Property by

the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or

sale of any real or personal property of the Debtor pursuant to, in implementation of, or as

contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness

by such means, and the making, delivery or recording of any deed or other instrument of transfer

under, in furtherance of, or in connection with, the Plan, including, without limitation, the

Confirmation Order, shall not be subject any applicable document recording tax, stamp tax,

conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or

governmental assessment.

11

49. **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Except as otherwise provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or by a Final Order of the Bankruptcy Court.

50. **Execution of Documents** -- The Debtor shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation.

51. **Recording Documents** -- Each and every federal, state and local governmental agency or department shall be authorized to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transaction contemplated by the Plan, including, but not limited to any and all notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly preserved by the Plan, and the Confirmation Order.

## LIQUIDATION ANALYSIS

52. In a liquidation under Chapter 7 of the Bankruptcy Code, the Debtor's assets would be sold and the sale proceeds distributed to creditors in their order of priority. The Debtor believes that the Plan provides a larger return for the Debtor's estate as could be achieved in a liquidation. As set forth on Exhibit B hereto, the Debtor projects that in a Chapter 7

liquidation, the return to the Debtor's estate would be reduced by an additional layer of administration legal expenses and commissions, which the Debtor estimates would total at least 15% of the sale proceeds.

## LITIGATION ANALYSIS

53.     The Debtor s is aware of no pending litigation or potential litigation, except a foreclosure action interposed by JP Morgan Chase pending in the Suffolk County Supreme Court.

## PAYMENT OF CLAIMS AND OBJECTIONS TO CLAIMS

54.     The Debtor shall be disbursing agent under the Plan without a bond.  The Debtor reserves the right to file objections to claims in the event grounds exist to object to particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date and on each distribution date as may thereafter be necessary, the Debtor shall maintain an undetermined claims distribution reserve for the holders of undetermined claims as of such date in a sum not less than the amount required to pay each such undetermined claim if such claim was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the distributions reserved for such Allowed Claim, shall be released from the undetermined claims distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all undetermined claims have been fixed, the balance of the undetermined claims distribution reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

55.     All unexpired leases and executory contracts shall be rejected under the Plan.  In the event of a rejection which results in damages a proof of claim for such damages

must be filed by the damaged party with the Court within sixty (60) days after the Effective Date. All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract or unexpired lease not filed with the Court within the time period provided herein shall be deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## MANAGEMENT OF THE DEBTOR

56.    The Debtor is managed by Lorenzo Deluca.  Post-confirmation management shall remain unchanged.

## TAX CONSEQUENCES

57.    The Debtor does not believe that there will be any negative tax consequences to the Debtor or to Creditors under the Plan.  To the extent that a creditor is not paid in full under the Plan, such creditor may be entitled to a bad debt deduction.  To the extent that a creditor has taken a bad debt deduction, Plan distributions may be taxable as income.

58.    THE DEBTOR DOES NOT PURPORT, THROUGH THIS DISCLOSURE STATEMENT, TO ADVISE THE CREDITORS OR INTEREST HOLDERS REGARDING THE TAX CONSEQUENCES OF THE TREATMENT OF THE CREDITORS AND INTEREST HOLDERS UNDER THE PLAN.  CREDITORS AND INTEREST HOLDER SHOULD SEEK INDEPENDENT COUNSEL CONCERNING THE TAX CONSEQUENCES OF THEIR TREATMENT UNDER THE PLAN.

## VOTING PROCEDURES AND REQUIREMENTS

59.    A ballot to be used for voting to accept or reject the Plan is enclosed with this Disclosure Statement.  Each creditor is entitled to execute the ballot, and return it to the undersigned to be considered for voting purposes.  The Bankruptcy Court has directed that, in order to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received no later than  December 28, 2016, at the following address:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York  10022, Attn:  Mark A. Frankel, Esq.

60.    Each Creditor of the Debtor whose Claim is impaired under the Plan is entitled to vote, if either (i) its Claim has been scheduled by the Debtor, or (ii) it has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for such filings.

61.     Any Claim as to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the Claim in an amount which it deems proper for the purpose of accepting or rejecting the Plan upon motion by a Creditor whose Claim is subject to an objection.  Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Court to confirm the Plan.

62.    A Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection was not solicited or procured in good faith or in accordance with the provisions of the Bankruptcy Code.

63.    The Bankruptcy Code defines acceptance of a Plan by a class of Creditors as acceptance by holders of two-thirds in dollar amount and a majority in number of the Claims of that class which actually cast ballots for acceptance or rejection of the Plan.

15

64.    The Bankruptcy Code defines acceptance of a Plan by a class of Interests as acceptance by holders of two-thirds in amount of the allowed Interests of such class held by holders of such interests.

## CONFIRMATION OF THE PLAN

65.    Section 1128(a) of the Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on confirmation of the Plan (the "Confirmation Hearing"). Section 1128(b) provides that any party in interest may object to confirmation of the Plan.

66.    By order of the Bankruptcy Court dated _____, 2016, the Confirmation Hearing has been scheduled for January 11, 2017, at 2:00 p.m., in the Honorable _____'s Courtroom, United States Bankruptcy Court, Conrad B Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing or any adjourned Confirmation Hearing.  Any objection to confirmation of the Plan must be made in writing and filed with the Bankruptcy Court with proof of service and served upon the following on or before December 28, 2016:  Backenroth Frankel & Krinsky, LLP, 800 Third Avenue, New York, New York 10022, Attn:  Mark A. Frankel, Esq.  Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014.

67.    At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of Section 1129 of the Bankruptcy Code have been satisfied to enter an order confirming the Plan.  The applicable requirements are as follows:  (a)  The Plan complies with the applicable provisions of the Bankruptcy Code, (b) the Debtor has complied with the

16

applicable provisions of the Bankruptcy Code; (c) the Plan has been proposed in good faith and not by any means forbidden by law, (d) any payment made or promised or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, the Bankruptcy Case, or in connection with the Plan and incident to the Bankruptcy Case, has been disclosed to the Bankruptcy Court, and any such payment made before the confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable, (e) the Debtor has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a Plan with the Debtor, or a successor to the Debtor under the Plan, and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and equity security holders and with public policy, and the Debtor has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider, (f) with respect to each class of impaired Claims, either each holder of a Claim or interest of such class has accepted the Plan, or will receive or retain under the Plan on account of such Claim or interest property of a value, as of the Effective Date of the Plan, an amount that is not less than the amount that such holder would so receive or retain if the Debtor was liquidated on such date under Chapter 7 of the Bankruptcy Code, (g) each class of Claims or interests has either accepted the Plan or is not impaired under the Plan, (h) except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that Administrative Expenses and priority Claims will be paid in full on the Effective Date, (i) at least one class of impaired Claims has accepted the Plan, determined without including any acceptance of the Plan by any insider

17

holding a Claim of such class, and (j) confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization of the Debtor or any successors to the Debtor under the Plan unless such liquidation or reorganization is proposed in the Plan.

68.    The Debtor believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtor has complied or will have complied with all of the requirements of Chapter 11, and that the proposals contained in the Plan are made in good faith.

69.    The Debtor contends that holders of all Claims impaired under the Plan will receive payments under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.

## CRAMDOWN

70.    In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan at the request of the Debtor if, as to each impaired class which has not accepted the Plan, the Plan "does not discriminate unfairly" and is "fair and equitable."

71.    The debtor intends to invoke the cramdown provisions of section 1129(b) as to any impaired class that does not accept the plan.

72.    A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives less than it is legally entitled to receive for its Claims or equity interests.  "Fair and equitable" has different meanings for Secured and Unsecured Claims.

18

73.     With respect to a Secured Claim, "fair and equitable" means either: (a) the impaired Secured Creditor retains its Liens to the extent of its Allowed Claim and receives deferred cash payments at least equal to the allowed amount of its Claim with a present value as of the Effective Date at least equal to the value of such Creditor's interest in the property securing its Liens; (b) property subject to the Lien of the impaired Secured Creditor is sold free and clear of that Lien, with that Lien attaching to the proceeds of the sale; or (c) the impaired Secured Creditor realizes the "indubitable equivalent" of its Claim under the Plan.

74.     With respect to an Unsecured Claim, "fair and equitable" means either: (a) each impaired Unsecured Creditor receives or retains property of a value equal to the amount of its Allowed Claim; or (b) the holders of Claims and Interests that are junior to the Claims of the dissenting class will not receive any property under the Plan.

75.     In the event one or more classes of impaired Claims rejects the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable and does not discriminate unfairly against any rejecting impaired class of Claims.

## <u>CONCLUSION</u>

76.     The Debtor urges the Debtor's Creditors to vote to accept the Plan and to

evidence such acceptance by returning their ballots so that they will be received no later than

December 28, 2016.

Dated:  New York, New York
        November 4, 2016

                          Seacrest Equities LLC
                          Debtor and Debtor in Possession


                          By:     <u>s/ Lorenzo Deluca</u>


                          **BACKENROTH FRANKEL & KRINSKY, LLP**
                          **Attorneys for Debtor**


                          By:     <u>s/Mark Frankel</u>
                                  800 Third Avenue
                                  New York, New York 10022
                                  (212) 593-1100

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re                                                    Chapter 11

      Seacrest Equities LLC                        Case no.   16-43956

                Debtor.
------------------------------------------------------------x

## **AMENDED PLAN OF REORGANIZATION**

Mark A. Frankel
BACKENROTH FRANKEL & KRINSKY, LLP
800 Third Avenue
New York, New York 10022
Telephone: (212) 593-1100
Fascimile: (212) 644-0544

ATTORNEYS FOR THE DEBTOR

## INTRODUCTION

Seacrest Equities LLC ("Debtor"), proposes this Plan of Reorganization to its Creditors.  UPON CONFIRMATION, THIS PLAN SHALL BE A BINDING OBLIGATION BETWEEN AND AMONG THE DEBTOR AND EACH OF THE DEBTOR'S CREDITORS (AS SUCH TERMS ARE DEFINED BELOW).

## DEFINITIONS

As used in this Plan, the following terms will have the meanings hereinafter set forth:

1.      "Administrative Expense" shall mean any cost or expense of administration of the Bankruptcy Case entitled to priority under section 507(a)(1) and allowed under section 503(b) of the Bankruptcy Code, and any fees or charges assessed against the Debtor's Estate under Chapter 123, Title 28, United States Code.

2.      "Administrative Expense Claim" shall mean claim for payment of an Administrative Expense.

3.      "Allowance Date" shall mean the date which a Disputed Claim becomes an Allowed Claim by Final Order.

4.      "Allowed Claim" shall mean a Claim: (a) to the extent that a proof of claim is filed timely or, with leave of the Court late filed as to which (i) no party in interest files an objection or (ii) which is allowed by a Final Order; or (b) which is listed on the Debtor's schedules or any amendments thereto but which is not listed therein as disputed, unliquidated or contingent.

2

5.      "Allowed Secured Claim" shall mean a Secured Claim to the extent it is an

Allowed Claim.

6.      "Allowed Unsecured Claim" shall mean an Unsecured Claim to the extent

it is an Allowed Claim.

7.      "Bankruptcy Case" shall mean this Chapter 11 bankruptcy case.

8.      "Bankruptcy Code" shall mean Title 11 of the United States Code (11.

U.S.C. § 101 et. seq.

9.      "Bankruptcy Court" shall mean the Court as defined below.

10.     "Bar Date" shall mean December 1, 2016.

11.     "Cash" shall mean all cash and cash equivalents which evidence

immediately available funds in United States dollars.

12.     "Claim" shall mean a right to payment as set forth in § 101(5) of the

Bankruptcy Code.

13.     "Claimant" shall mean the holder of a Claim.

14.     "Confirmation Date" shall mean the date of the entry of the Confirmation

Order.

15.     "Confirmation Hearing" shall mean the hearing pursuant to the

Bankruptcy Code Section 1128 before the Bankruptcy Court regarding the proposed

confirmation of the Plan.

16.     "Confirmation Order" shall mean the order of the Court confirming the

Plan.

3

17.     "Court" shall mean the United States Bankruptcy Court for the EASTERN District of New York.

18.     "Creditor" shall mean any entity that holds a Claim against the Debtor.

19.     "Debtor" shall mean Seacrest Equities LLC

20.     "Disputed Claim" shall mean the whole or any portion of any claim against the Debtor to which an objection is timely filed as to which a Final Order has not been entered allowing or disallowing such Claim or any portion thereof.

21.     "Effective Date" shall mean the Date upon which the Confirmation Order is a Final Order, or such other date after the Confirmation Date as may be practicable.

22.     "Estate" shall mean the estate of the Debtor created upon the commencement of the Bankruptcy Case pursuant to Section 541 of the Bankruptcy Code.

23.     "Executory Contracts" shall mean "executory contracts" and "unexpired leases" as such terms are used within Section 365 of the Bankruptcy Code.

24.     "Final Order" shall mean an order of the Court that has not been reversed, modified, amended or stayed, and as to which the time to appeal or to seek review or certiorari thereof has expired, and as to which no appeal, review or rehearing is pending.

25.     "Interest" shall mean an existing ownership interest in the Debtor.

26.     "Interest Holder" shall mean a holder and owner of an existing Interest in the Debtor.

27.     "Legal Rate" shall mean the applicable interest rate as set forth in 28 U.S.C. §1961 as of the Petition Date.

28.    "Lien" shall mean a charge against or interest in property to secure payment of a debt or performance of an obligation.

29.    "Petition Date" shall mean September 1, 2016.

30.    "Plan" shall mean this Plan of Reorganization, and any and all modifications and/or amendments hereto.

31.    "Property" shall mean 12 Seacrest Drive Huntington, New York.

32.    "Proponent" shall mean Seacrest Equities LLC.

33.    "Secured Claim" shall mean a Claim secured by a Lien on property included within the Debtor's Estate.

34.    "Secured Creditor" shall mean the owner or holder of a Secured Claim.

35.    "Unsecured Claim" shall mean a claim for which the Claimant does not hold (a) a valid, perfected and enforceable Lien, security interest or other interest in or encumbrance against Debtor or the Debtor's Estate; (b) a right to setoff to secure the payment of such Claim.  An Unsecured Claim includes, but is not limited to, a Claim for damages resulting from rejection of any Executory Contract pursuant to Section 365 of the Bankruptcy Code, and does not include administrative of priority claims.

36.    "Unsecured Creditor" shall mean the owner or holder of an Unsecured Claim.

## CLAIMS CLASSIFICATION AND TREATMENT

### Class 1

37.    Classification – Suffolk County real estate tax Liens.  Claims total approximately $0.00

38.    Treatment -- Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

39.    Voting -- Unimpaired and deemed to have accepted the Plan.

### Class 2

1.    **Classification** – Grasmere Notebuyer LLC. Claim totals approximately $1,500,000.

2.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 2 Claims after payment of Class 1 Claims.  If less than $25,000 is available for Unsecured Claims after payment of senior claims under the Plan, the Class 2 Claimant shall escrow $25,000 with Debtor's counsel to be disbursed pro-rata to Holders of Unsecured Claims as set forth in the Class 5 treatment section of the Plan. The Claimant shall have no Class 5 deficiency claim under the Plan.

3.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 3

4.    **Classification** – JP Morgan Chase.  Mortgage claims totals approximately $1,850,000

5.    **Treatment** – Payment of available Cash up to Allowed Amount of Class 3 Claims after payment of Class 1 and 2 Claims. The Claimant shall have a Class 8 Unsecured Claim for the unpaid amount of its Secured Claim.

6.    **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 4

7.    **Classification** –   Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code.  Claims total approximately $0.

8.    **Treatment** – Payment in full in Cash of Allowed Amount on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

9.    **Voting --** Unimpaired and deemed to have accepted the Plan.

### Class 5

10.    **Classification** – General Unsecured Claims.  Claims total approximately $1,191,529, including $1,083,429 of wholly under-secured lien creditors, and $108,500 of general unsecured claims.

11.    **Treatment** – Payment of available cash up to Allowed Amount of Class 8 Claims, plus interest at the Legal Rate after payment of administration claims, unclassified tax claims, Class 1, 2, 3, and 4 Claims. If less than $25,000 is available for Class 8 Claims after payment of senior claims as provided for in the preceding sentence, then each Holder of a General Unsecured Claim shall be paid its pro-rata share of a $25,000 distribution fund.  To the extent necessary, such fund will be funded by the Class 2 Claimant.  The Class 2 Claimant and

7

Randall Funding as Class 4 Claimant, shall not be entitled to a Class 5 Claim but shall retain their rights to vote as a class 8 Claimant.

12.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### Class 6

13.     **Classification** – Interests Holders.

14.     **Treatment** – Payment of available cash after payment of administration claims, unclassified tax claims, Class 1, 2, 3, 4, and 5 Claims.

15.     **Voting** – Impaired and entitled to vote to accept or reject the Plan.

### UNCLASSIFIED PRIORITY TAX CLAIMS

16.     Priority tax Claims under Sections 507(a)(8) of the Bankruptcy Code total approximately 0. The treatment of such Claims, if any, shall be payment in full in Cash of the Allowed Claim on the Effective Date, plus interest at the applicable statutory rate as it accrues from the Petition Date through the date of payment.

### ADMINISTRATION CLAIMS

17.     Allowed Administrative Expenses shall be paid in full in Cash on the Effective Date, or the date such Administrative Expense becomes Allowed, except to the extent that the holder of an Allowed Administrative Expense agrees to a different treatment; provided however, that Allowed Administrative Expenses representing obligations incurred in the ordinary course of business or assumed by the Debtor shall be Paid in full or performed by the Debtor in the ordinary course of business or pursuant to the terms and conditions of the particular transaction.  Any outstanding U.S. Trustee fees shall be paid in full in Cash on the Effective

8

Date.  United States Trustee fees will be paid, and operating reports will be filed as they come due by the Debtor.

## MEANS FOR IMPLEMENTATION

18.    **Source of Funds** – Effective Date payments under the Plan will be paid from the proceeds of the sale of the Property as described in Exhibit A to the Plan, and from an additional amounts to be contributed by the Class 2 Claimant to the extent necessary.  The transfer of the Property under the Plan shall be free and clear of all liens, claims and encumbrances, with any such liens, claims and encumbrances to attach to the sale proceeds, and to be disbursed under the Plan.

19.    **Sale Approval** -- As part of the sale under the Plan, and in order to ensure consummation of the Plan, the Plan requires that  the Confirmation Order contain the following findings of fact and conclusions of law: (a) that the terms and conditions of the sale are fair and reasonable, (b) that the sale, and the purchaser's purchase, of the Property pursuant to the Plan, is non-collusive, fair and reasonable and was conducted openly and in good faith, (c) that the transfer of the Property to the purchaser represents an arm's-length transaction and was negotiated in good faith between the parties, (d) that the purchaser, as transferee of the Property, is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, is entitled to the full protection of Bankruptcy Code § 363(m), (e) the sale of the Property to the purchaser was not controlled by an agreement among potential purchasers, (f) that no cause of action exists against the Purchaser or with respect to the sale of the Property to the purchaser under Bankruptcy Code § 363(n), and (g) that any claims under Bankruptcy Code § 363(n) or any other claims as against the Purchaser are hereby released, waived and discharged.

20.    **Release of Liens** -- Except as otherwise provided for in the Plan, (a) each holder of a Secured Claim, shall on the Effective Date (x) turn over and release to the Debtor any and all Collateral that secures or purportedly secures such Claim, as pertains to the Property or such Lien shall automatically, and without further action by the Debtor be deemed released, and (y) execute such documents and instruments as the Debtor requests to evidence such Claim holder's release of such property or Lien.

21.    **Stamp Tax** -- Under the Plan, pursuant to Bankruptcy Code § 1146(c), (a) the issuance, transfer or exchange of any securities, instruments or documents, (b) the creation of any other Lien, mortgage, deed of trust or other security interest, (c) the making or assignment of any lease or sublease or the making or delivery of any deed or other instrument of transfer under, pursuant to, in furtherance of, or in connection with, the Plan, including, without limitation, any deeds, bills of sale or assignments executed in connection with the purchase of the Property by the Purchaser and any other transaction contemplated under the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated in the Plan, and (d) the issuance, renewal, modification or securing of indebtedness by such means, and the making, delivery or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Confirmation Order, shall not be subject any applicable document recording tax, stamp tax, conveyance fee or other similar tax, mortgage tax, real estate transfer tax, or other similar tax or governmental assessment.

22.    **Vesting** -- Except as otherwise provided in the Plan, on the Effective Date all assets and properties of the Estate shall vest in the Debtor free and clear of all Liens, Claims and encumbrances and any and all liens, claims and encumbrances that have not been expressly

preserved under the Plan shall be deemed extinguished as of such date.  Except as otherwise

provided herein, as of the Effective Date, all property of the Debtor shall be free and clear of all

Claims and Interests of Creditors, except for the obligations that are imposed under the Plan or

by a Final Order of the Bankruptcy Court.

23.    **Execution of Documents** -- The Debtor shall be authorized to execute, in

the name of any necessary party, any notice of satisfaction, release or discharge of any Lien,

Claim or encumbrance not expressly preserved in the Plan and deliver such notices to any and all

federal, state and local governmental agencies or departments for filing and recordation.

24.    **Recording Documents** -- Each and every federal, state and local

governmental agency or department shall be authorized to accept and record any and all

documents and instruments necessary, useful or appropriate to effectuate, implement and

consummate the transaction contemplated by the Plan, including, but not limited to any and all

notices of satisfaction, release or discharge of any Lien, Claim or encumbrance not expressly

preserved by the Plan, and the Confirmation Order.

25.    Preservation of Claims -- All rights pursuant to Sections 502, 544, 545 and

546 of the Bankruptcy Code, all preference claims pursuant to Section 547 of the Bankruptcy

Code, all fraudulent transfer claim pursuant to Section 548 of the Bankruptcy Code, and all

claims relating to post-petition transactions under Section 549 of the Bankruptcy Code shall be

preserved for the benefit of the Debtor's estate.

## DISTRIBUTIONS TO CREDITORS

26.    The Debtor shall be disbursing agent under the Plan without a bond.  The

Debtor reserves the right to file objections to claims in the event grounds exist to object to

particular claims, for a period of 60 days after the Effective Date.  On the initial distribution date

and on each distribution date as may thereafter be necessary, the Debtor shall maintain an

undetermined claims distribution reserve for the holders of undetermined claims as of such date

in a sum not less than the amount required to pay each such undetermined claim if such claim

was allowed in full.  To the extent that an undetermined claim becomes an Allowed Claim, the

distributions reserved for such Allowed Claim, shall be released from the undetermined claims

distribution reserve and paid to the holder of such Allowed Claim.  After all the amounts of all

undetermined claims have been fixed, the balance of the undetermined claims distribution

reserve shall thereafter be paid in accordance with the Plan.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

27.     All unexpired leases and executory contracts shall be rejected under the

Plan.  In the event of a rejection which results in damages a proof of claim for such damages

must be filed by the damaged party with the Court within sixty (60) days after the Effective Date.

All Allowed Claims arising from the rejection of any Executory Contract or unexpired lease shall

be treated as Unsecured Claims.  Any Claim arising from the rejection of any Executory Contract

or unexpired lease not filed with the Court within the time period provided herein shall be

deemed discharged and shall not be entitled to participate in any distribution under the Plan.

## RETENTION OF JURISDICTION

28.     Retention of Jurisdiction.  The Court shall have jurisdiction over all

matters arising under, arising in, or relating to the Debtor's Bankruptcy Case including, but not

limited to, proceedings:  (a) to consider any modification of the Plan under section 1127 of the

Bankruptcy Code; (b) to hear and determine all Claims, controversies, suits and disputes against

12

the Debtor to the full extent permitted under 18 U.S.C. §1334 and 28 U.S.C. §157; (c) to hear,

determine and enforce all Claims and causes of action which may exist on behalf of the Debtor

or the Debtor's estate, including, but not limited to, any right of the Debtor or the Debtor's Estate

to recover assets pursuant to the provisions of the Bankruptcy Code; (d) to hear and determine all

requests for compensation and/or reimbursement of expenses which may be made; (e) to value

assets of the Estate; (f) to enforce the Confirmation Order, the final decree, and all injunctions

therein; (g) to enter an order concluding and terminating the Bankruptcy Case; (h) to correct any

defect, cure any omission, or reconcile any inconsistency in the Plan, or the Confirmation Order;

(h) to determine all questions and disputes regarding title to the assets of the Debtor; and (i) to

re-examine Claims which may have been allowed for purposes of voting, and to determine

objections which may be filed to any Claims.

## **GENERAL PROVISIONS**

29.     Headings.  The headings in the Plan are for convenience of reference only

and shall not limit or otherwise affect the meaning of the Plan.

30.     Calculation of Time Periods.  Bankruptcy Rule 9006 is incorporated

herein for purposes of calculating the dates set forth herein.

31.     Other Actions.  Nothing contained herein shall prevent the Debtor, Interest

Holders, or Creditors from taking such actions as may be necessary to consummate the Plan,

although such actions may not specifically be provided for within the Plan.

32.     Modification of Plan.  The Debtor may seek amendments or modifications

to the Plan in accordance with section 1127 of the Bankruptcy Code at any time prior to the

Confirmation Date.  After the Confirmation Date, the Debtor may seek to remedy any defect or

omission or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such

manner as may be necessary to carry out the purposes and intent of the Plan

## **INJUNCTION AND PROPERTY OF THE ESTATE**

33.     Injunction.  The confirmation of this Plan shall constitute an injunction of

the Court against the commencement or continuation of any action, the employment of process,

or any act, to collect, recover or offset from the Debtor or its property or properties, any

obligation or debt except pursuant to the terms of the Plan.

## **CLOSING THE CASE**

34.     Upon substantial consummation, the Debtor may move for a final decree

to close the Bankruptcy Case and to request such other orders as may be just.

Dated:  New York, New York
            November 4, 2016

                                        Seacrest Equities LLC


                        By:     s/ Lorenzo Deluca



                                        BACKENROTH FRANKEL & KRINSKY, LLP
                                        Attorneys for Debtor



                        By:     s/Mark A. Frankel
                                        800 Third Avenue
                                        New York, New York 10022
                                        (212) 593-1100

14

## EXHIBIT A TO PLAN

## SALE AND BID PROCEDURES

Set forth below are the bid procedures (the "**Bidding Procedures**") to be employed in connection with the sale of Real Property located at 12 Seacrest Drive Huntington, New York (the "**Real Property**") owned by Seacrest Equities LLC (the "**Debtor**") pursuant to the Disclosure Statement for her Chapter 11 Plan ("**Plan**") in the Debtor's chapter 11 case pending in the United States Bankruptcy Court for the EASTERN District of New York (the "**Bankruptcy Court**"), case number  16-43956 (the "**Bankruptcy Case**").

The Real Property shall be sold to _____ ("**Purchaser**") for a purchase price totaling $_____. The Sale is subject to (i) approval by the Bankruptcy Court; (ii) entry of an order, providing, *inter alia,* that Purchaser is a good faith purchaser; and that the sale of the Real Property to Purchaser shall be free and clear of all liens, claims, encumbrances and interests (the "**Stalking Horse Offer**"). The Stalking Horse Offer is subject to competitive bidding as set forth herein.

### The Bidding Procedures

1.      **Proposed Stalking Horse Offer Subject to Higher and Better Offers**.

The sale of the Real Property and the Stalking Horse Offer is subject to higher and better offers, and, as such, Purchaser will serve as the "stalking-horse" bidder for the Real Property.

2.      **Provisions Governing Qualifications of Bidders**. To participate in the Bidding Process, prior to the Bid Deadline (defined below), to be deemed a Qualified Bidder a potential bidder ("**Potential Bidder**") must deliver the following to the Notice Parties (as defined below):

     (i)      a written disclosure of the identity of each entity that will bid for the Real Property or otherwise participate in such bid;

     (ii)      deliver documents necessary to reasonably permit the Debtor and the Court , if necessary, to determine that the Potential Bidder is reasonably likely to submit a *bona fide* offer and to be able, financially and legally, to consummate a sale if selected as a Successful Bidder.

3.    **Provisions Governing Qualified Bids**. A bid submitted will be a Qualified Bid only if the bid is submitted by a Qualified Bidder and complies with all of the following (a "**Qualified Bid**"):

(i)    it is accompanied by a signed copy of these Bidding Procedures;

(ii)    it states that the Qualified Bidder offers to purchase the Real Property upon the terms and conditions that are no less favorable to the Debtor than those set forth in the Stalking Horse Offer;

(iii)    it includes a signed writing that the bidder's offer is irrevocable until the selection of the Successful Bidder, provided that if such bidder is selected as the Successful Bidder its offer shall remain irrevocable.

(iv)    it states that there are no conditions precedent to the bidder's ability to enter into a definitive agreement and that all necessary internal and shareholder approvals have been obtained prior to the bid;

(iv)    it includes a duly authorized and executed copy of the Form Asset Purchase Agreement, annexed hereto as **Exhibit 1** including the purchase price for the Real Property expressed in U.S. Dollars (the "Purchase Price") and which shall be for a minimum purchase price of $_____ (the "**Minimum Overbid**"), with all exhibits and schedules thereto, with copies marked to show any amendments and modifications to the Form Asset Purchase Agreement ("Marked Agreement") and the proposed orders to approve the sale by the Bankruptcy Court;[1]

(v)    it is accompanied by a good faith deposit by wire transfer or bank check payable to the order of  the Debtor's Attorney Trust Account equal to ten percent (10%) of the Minimum Overbid (the "**Deposit**");

(vi)    it is received prior to the Bid Deadline;

(vii)    it states the  Qualified Bidder is not relying upon any written or oral statements, representations, promises, warranties or guarantees of any kind whether expressed or implied, by operation of law or otherwise, made by any person or party including the Debtor, and its respective agents and representatives regarding the

---

[1] While bidders may suggest modifications to the Form Agreement, any such modifications deemed to increase the obligations or burdens upon the Debtor's estate (such as additional conditions) will be factored into the consideration of whether to accept such bid.  Bidders should note that the Form Agreement provides, or shall provide, for rejection of any and all of the Debtor's executory contracts, except for tenant leases, at Confirmation. Except for tenant leases, the Debtor does not appear to be a party to any other executory contracts.

Real Property, the Bid Procedures or any information provided in connection therewith;

(viii)   it acknowledges the bid does not request or entitle the Qualified Bidder to any break-up fee, termination fee, expense reimbursement or similar type of payment;

(ix)   it states that the bid is not be conditioned on obtaining financing or any internal approval, on the outcome or review of due diligence, environmental, or any other contingencies not otherwise contained in the Purchase Agreement;

(x)   it states that the sale of the Real Property is subject to confirmation of the Plan.

4.   **Bid Deadline.**  The deadline for submitting bids shall be

_____, 2016 at 4:00 p.m. (the "**Bid Deadline**").  Prior to the Bid Deadline, a

bidder that desires to make an offer, solicitation or proposal (a "**Bid**") must deliver written

copies of its Bid to counsel for the Debtor: Backenroth Frankel & Krinsky, LLP, attn. Mark

Frankel, 800 Third Avenue, New York, NY 10022 (Email: mfrankel@bfklaw.com) (the "**Notice**

**Party**").

5.   **The Auction Process.** If a Qualified Bid is received, an auction sale

(the "**Auction**") will be conducted at _____, **on _____, 2016**

**at ___:00.**  Counsel to the Debtor shall confirm to all Qualified Bidders the time and place of

the Auction and notify such bidders of the material terms which the Debtor, believes is the

highest, best and otherwise financially superior offer for the Real Property, as determined by the

Debtor (the "**Opening Bid**").  If, however, no Qualified Bid is received, then the Auction will

not be held, and the Stalking Horse Offer shall be deemed to be the Successful Bid, subject to

Bankruptcy Court approval. The Auction shall run under the following procedures:

(i).   Participation at Auction.  Attendance at the Auction shall be limited to the Debtor and its representatives, and any Qualified Bidder, or its duly authorized representative, (and the legal and financial advisers to each of the foregoing).

(ii)   No Collusion.  Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion regarding the bidding or the proposed Sale.

(iii)    at least one (1) Business Day prior to the Auction, each Qualified Bidder who has timely submitted a Qualified Bid must inform Debtor's counsel whether it intends to attend the Auction; provided that if a Qualified Bidder elects not to attend the Auction, such Qualified Bidder's Qualified Bid shall remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bidder and Back-Up Bidder at the conclusion of the Auction. At least one (1) Business Day prior to the Auction, the Debtor's counsel will provide copies of the Qualified Bid or combination of Qualified Bids which the Debtor believes, in its reasonable discretion, is the highest or otherwise best offer (the "**Starting Bid**")to all Qualified Bidders;

(iv)    all Qualified Bidders who have timely submitted Qualified Bids will may be present for all Subsequent Bids (as defined below) at the Auction and the actual identity of each Qualified Bidder will be disclosed on the record at the Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person;

(v)    bidding at the Auction will begin with the highest Minimum Overbid received and will continue in bidding increments (each a "**Subsequent Bid**") of at least an additional $10,000.00 above the prior bid, or in any lower amount the Debtor deems reasonable. After the first round of bidding and between each subsequent round of bidding, Debtor's counsel shall announce the bid (and the value of such bid) that it believes to be the highest or otherwise better offer (the "**Leading Bid**"). A round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a Subsequent Bid knowing the Leading Bid. Except as specifically set forth herein, to evaluate the value of the consideration provided by Subsequent Bids, the Debtor shall give effect to any additional costs which may be imposed on the Debtor, including but not limited to the cost of broker fees and/or commissions.

(vi)    The Debtor shall direct and preside over the Auction.  Other than as set forth herein, the Debtor may conduct the Auction in the manner it determines will cause the highest, best or otherwise financially superior offer for the Real Property.

6.    **Selection of Successful Bid**. The Debtor will review and evaluate each

Qualified Bid under the procedures set forth herein and determine which offer is the highest or

best offer from among the Qualified Bidders submitted at Auction (one or more such bids,

collectively the "**Successful Bid**" and the bidder(s) making such bid, collectively, the

"**Successful Bidder**"), and communicate to the other Qualified Bidders the identity of the

Successful Bidder and the details of the Successful Bid.

(i)     The determination of the Successful Bid by the Debtor at the conclusion of the Auction shall be final, but shall remain subject to approval by the Bankruptcy Court.

(ii)    Within one (1) day after adjournment of the Auction, the Successful Bidder shall, to the extent necessary, augment its deposit by wire transfer or other immediately available funds such that its deposit continues to equal ten percent (10%) of the highest and best bid and complete and execute all agreements, contracts, instruments and other documents evidencing and containing the terms and conditions upon which the Successful Bid was made;

(iii)   Within one (1) day after adjournment of the Debtor shall file a notice identifying the Successful Bidder with the Bankruptcy Court;

(iv)    A sale of the Real Property to the Successful Bidder will take place consistent with the Plan pursuant to the terms of the Successful Bid after approval of such Successful Bid by the Bankruptcy Court at the Sale Hearing;

(v)     At the conclusion of the Auction, Debtor's counsel will also announce the second highest and best bid (the "**Back-Up Bidder**").  If the Successful Bidder fails to augment its deposit or consummate the purchase of the Real Property the Back-Up Bidder will be deemed to have submitted the highest and best bid.  If the Successful Bidder closes, the Back-Up Bidder's deposit (plus accrued interest, if any) shall be returned to the Back-Up Bidder. If the Successful Bidder fails to close, the Back-Up Bidder's deposit shall be treated in the manner described below.

(vi)    **Subject to Court Approval.** The Debtor's estate will be deemed to have accepted a bid only when the bid has been approved by the Court.  If the Successful Bidder or the Back-Up Bidder shall fail to consummate an approved Sale because of a breach or failure to perform by such Successful Bidder (or Back-Up Bidder, as the case may be), the Debtor's estate shall retain such Successful Bidder's (or Back-Up Bidder's, as the case may be) Deposit, in addition to other additional remedies available to the Debtor under applicable law. The Debtor shall credit the Good Faith Deposit of such Successful Bidder or the Back-Up Bidder towards the purchase price.

7.     **Escrow of Bid Deposits.** Within two (2) business days after entry of

the Sale Order approving the sale of the Real Property, Deposits shall be returned to all

bidders except the Successful Bidder and Back Up Bidder.  The deposit of the Successful

Bidder shall be applied to the purchase price at closing.

8.      **Deposit Forfeit.** The Deposit will be forfeited as liquidated damages

and the Successful Bidder, held liable for compensatory damages if the Successful Bidder fails to

close by reason of its breach of the Purchase Agreement to be signed by the Successful Bidder,

subject to the terms of the Purchase Agreement.

9.      **Hearing.**  The Bankruptcy Court shall conduct a hearing to confirm to

confirm the results of the Auction at a hearing to be held on _____, 2016, at ___ .m., in the

Honorable _____'s Courtroom, United States Bankruptcy Court,

Conrad B Duberstein Courthouse, 271-C Cadman Plaza East, Brooklyn, NY 11201

10.      **Closing.**  The closing of the sale must occur within fifteen (15) days of the

Bankruptcy Court order approving the Sale, unless agreed to in writing by the Debtor, or as

otherwise provided by Order of the Court.

11.      **Objection Deadline to the proposed Sale of Real Property.**  Any party

that wishes to object to the proposed sale of Real Property under the Plan (**"Sale Objection"**),

shall be required to file an objection <u>by 12:00 p.m.</u> **(prevailing Eastern Time) on**

**_____, 2016** (the "Sale **Objection Deadline**") and serve a copy of the Sale

Objection, to be received by the Sale Objection Deadline, upon (i) Backenroth Frankel &

Krinsky, LLP, attn. Mark Frankel, 800 Third Avenue, New York, NY 10022 (Email:

mfrankel@bfklaw.com) (ii) the Office of the United States Trustee for the Eastern District of

New York; and (iii) all parties filing an entry of appearance and request for notices under Fed. R.

Bankr. P. 2002.  Objections to the Auction or the selection of the highest bidder or otherwise best

bid shall be heard at the Sale Hearing.

20

The undersigned Bidder acknowledges that such Bidder has read and understands a copy of these Bidding Procedures.

_____
Name of Bidder


_____
Signature of Bidder


_____
Title of Bidder (for Bidder other than individual)

## CONTRACT OF SALE

AGREEMENT made on the _____ day of _____, 2016, between Seacrest Equities

LLC ("Seller", also referred to as "Debtor") and _____ ("Purchaser"),

having an address at _____.

## W I TN E S S E T H:

12.     Purchase and Sale. Seller agrees to sell and convey to Purchaser, and

Purchaser agrees to purchase from Seller, upon the terms and conditions hereinafter contained,

the premises known as and by the street address 12 Seacrest Drive Huntington, New York (the

"Premises"), together with any buildings and improvements  thereon erected.

13.     Title of Seller. This sale includes all right, title and interest, if any, of

Seller in and to any land lying in the bed of any street, road or avenue, opened or proposed, in

front of or adjoining the Premises, to the center line thereof, and all right, title and interest of

Seller in and to any award made or to be made in lieu thereof and in and to any unpaid award for

damages to the Premises by reason of change of grade of any street; Seller shall execute and

deliver to Purchaser, on the closing  of title (the "Closing") on request of Purchaser, all proper

instruments for the conveyance of such title and the assignment and collection of any such

award.

14.     Acceptable Title.  Seller shall give, and Purchaser shall accept, such title

as shown on the attached title report.

15.     Purchase Price.  Purchaser shall pay to Seller for the Premises the sum of

($_____) (hereinafter, the "Purchase Price"). Purchaser shall pay the Purchase

Price as follows:

(a) _____ ($_____) Dollars upon the execution and delivery of this Agreement, by wire transfer or Purchaser's check payable to the order of Backenroth Frankel & Krinsky, LLP, as attorneys, who shall deposit same and hold the proceeds pending the closing of this sale, the cancellation of the Contract, or the order of the Bankruptcy Court for the Eastern District of New York, subject to collection and drawn on a bank which is a member of the New York Clearinghouse Association, the receipt whereof is hereby acknowledged (said sum and any interest thereon, hereinafter collectively the "Down Payment").

(b) _____ ($_____), representing the balance of the Purchase Price, by wire transfer of immediately available funds to Backenroth Frankel & Krinsky, LLP, as attorneys, or bank check drawn on a bank which is a member of New York Clearinghouse Association, payable to the direct order of Wayne Greenwald, as Disbursing Agent to be paid upon the Closing.

16.    Claims.  Backenroth Frankel & Krinsky, LLP hereby agrees to deposit the cash sale proceeds in an escrow account, to be administered Backenroth Frankel & Krinsky, LLP, as attorneys, sufficient funds to pay all creditors, whether secured, administrative, priority or unsecured, the allowed amounts of their claims, with applicable interest.

17.    Transfer Tax.  The transaction herein is a transfer pursuant to and in contemplation of the Seller's Chapter 11 Plan of Reorganization and, accordingly, shall not be subject to any federal, state, local, municipal or other law imposing a transfer or stamp tax, mortgage tax, or any other law imposing or claiming to impose a transfer or stamp tax, mortgage tax, or any other similar tax in connection with this sale pursuant to section 1146 (a) of the Bankruptcy Code.

18.    Bankruptcy Court Order.  This Contract is subject the entry of a Sale Order approving the Contract under the Seller's Plan of Reorganization. "Sale Order" means an order of the Bankruptcy Court pursuant to sections 105, 363(b), 363(f) and 365 of the

2

Bankruptcy Code which order authorizes and approves, inter alia, the sale of the Property to the

Purchaser on the terms and conditions set forth herein, free and clear of all liens claims and

encumbrances pursuant to 11 U.S.C. section 363(f), except  as otherwise set forth herein, and

the assumption by the Purchaser, and assignment by Seller, of the assigned contracts, if any, and

containing a finding that Purchaser has acted in "good faith" within the meaning of section 363

(m) of the Bankruptcy Code. The Sale Order shall be in the form and substance reasonably

acceptable to Purchaser. If said Sale Order is not obtained, then this Contract shall be terminated,

shall be of no further force or effect, the deposit shall be returned to Purchaser, and neither party

shall have any further obligation or liability to the other.

19.    Closing.  The Closing shall take place at the office of Seller's attorneys, or

other mutually acceptable location, within seven (15) days of entry of a Bankruptcy Court order

approving the sale.  Upon receipt of the balance of the Purchase Price, as aforesaid, Seller shall

deliver an executed and acknowledged bargain and sale deed for the Premises in statutory form

for recording, sufficient to convey fee simple title to the Premises free and clear of all

encumbrances except as provided in this Agreement.  For convenience, Seller may omit from the

deed the recital of any or all of the "subject to" clauses herein contained and/or any other title

exceptions, defects or objections which have been waived or consented to by Purchaser pursuant

to and in accordance with this Agreement.  The date on which the Closing shall take place is

hereinafter referred to as the "Closing Date."

20.    Broker. The parties agree that no broker brought about this transaction.

Purchaser and Seller represents to each other that they did not negotiate with any broker in

connection with this transaction. Purchaser and Seller hereby agree to indemnify, defend and

hold each other harmless from and against any and all claims, losses, liabilities, costs and expenses (including attorneys' fees and disbursements) resulting from any claim that may be made against either party by any broker, or any other person claiming a commission, fee or other compensation by reason of this transaction, if the same shall arise by, through or on account of any alleged act of Purchaser or Seller or their representatives. The provisions of this paragraph shall survive the Closing, or if the Closing does not occur, the termination of this Agreement

21.    Fixtures.

(a) Seller represents and warrants that at the time of the Closing all fixtures attached to the Premises will be owned by Seller. All fixtures attached or appurtenant to or used in connection with the Premises are included in this sale in their "as is" condition as of the date of this Agreement, subject to ordinary wear and tear, casualty and natural deterioration and obsolescence.

(b) No portion of the Purchase Price is attributable to the fixtures and items of personal property included in this sale. Notwithstanding the foregoing, Purchaser agrees to pay any sales tax which may be assessed by any governmental authority in connection with the transfer or conveyance of any such property under this Agreement.

22.    Notices. Any  demand,  request, consent or other notice given or required to be given under this Agreement shall be deemed given only if in writing and sent by personal delivery, reliable overnight courier with evidence of receipt, or by email or facsimile transmission (if by email and or facsimile with confirmation by one of the other methods of notice),  addressed as follows:

To Seller:  To the address first set forth above
and a copy to:         Backenroth Frankel & Krinsky, LLP,
                       attn. Mark Frankel,
                       800 Third Avenue,
                       New York, NY 10022 (
                       Email: mfrankel@bfklaw.com)

4

To Purchaser:

and a copy  to:

Or at such other addresses as the parties may designate to the other by written notice in the manner herein provided. Any such notices or elections shall be effective at the following times: (i) upon delivery, if personally delivered; (ii) the first business day after delivery to the overnight courier; or (iii) the date of transmission if by fax, provided such transmission was received during business hours on any business day and otherwise on the next occurring business day.

23.     Title Affidavit. If a search of the title discloses judgments, bankruptcies or other returns against other persons having names the same as or similar to that of Seller, Seller shall on request deliver to Purchaser an affidavit in form acceptable to the Title Insurer showing that such judgments, bankruptcies or other returns are not against Seller.

24.     Allowance Out of Purchase Price. The amount of any amounts to be paid by Seller as per this Agreement may, at the option of Seller, be allowed to be paid by Purchaser on behalf of Seller out of the balance of the Purchase Price, provided that official bills therefore with interest and penalties thereon computed to such date are furnished by Seller at the Closing.

25.     Survival of Representations. Except as otherwise expressly provided tothe contrary in this Agreement, no representations, warranties, covenants or other obligations of

Seller set forth in this Agreement shall survive the Closing, and no action based thereon shall be commenced after the Closing.

26.    Foreign Persons.  At the Closing, Seller shall deliver to Purchaser either (a) an affidavit signed and sworn to under penalties of perjury by Seller stating that Seller is not a foreign person" (as defined in Section 1445 (F)(3) of the Internal Revenue Code of 1986, as amended (the "Code") or (b) a "Qualifying Statement"(as defined in Section 1445 (b)(4) of the Code).

27.    Seller's Deliveries at Closing.  In  addition to the other items  referred to in  this Agreement, Seller shall deliver any such other documents, instruments and agreements which are necessary or appropriate in order to consummate the transactions contemplated hereby.

28.    Condemnation.  Seller represents and warrants that Seller has no knowledge of pending or contemplated condemnation proceedings affecting the Premises or any part thereof as of the date hereof.

29.    Casualty and Condemnation.  The parties waive the provisions of Section 5-1311 of the General Obligations Law. If, prior to the Closing, all or a material part of the Premises is destroyed, by fire or the elements or by any cause beyond either party's control, without fault of Purchaser or is taken by eminent domain, Purchaser may, by notice to Seller given within ten (10) business days after notice to Purchaser of such destruction or taking, elect to cancel this Agreement. In the event that Purchaser shall so elect, the Down Payment shall be paid to Purchaser and neither party shall have any further rights or obligations hereunder.  Unless

this Agreement is so canceled, or if less than a material part of the Premises is damaged by fire

or other cause or taken by eminent domain, this Agreement shall remain in full force and effect

in which event, Seller shall, on the Closing Date, and upon receipt of the balance of the Purchase

Price, pay to Purchaser any sums of money collected by Seller under policies of insurance or as

an award for any taking by eminent domain, this Agreement shall remain in full force and effect,

in which event, Seller shall, on the Closing Date, and upon receipt of the balance of the

Purchase Price, pay to Purchaser any sums of money collected by Seller under policies of

insurance or as an award for any taking by eminent domain, after deducting any reasonable

amount which Seller may have agreed or been obligated to pay for repairs or restoration of the

damage, or in obtaining such award, in each case including attorneys' fees and disbursements.  In

addition Seller shall assign, transfer and set over to purchaser all of Seller's right, title and

interest in and to said policies and any further sums payable thereunder, and all of Seller's right,

title and interest in and to any portion of any condemnation award not yet received by Seller.

Rent insurance proceeds, if any, shall be apportioned as of the Closing Date. For purposes of this

Agreement, a material part of the Premises shall be deemed to be destroyed if the cost to repair

any casualty shall exceed $250,000.00.

30.     No Modification.  This Agreement may not be modified or terminated

orally or in any manner other than by an agreement in writing signed by all the parties hereto or

their respective successors in interest.

31.     Governing Law. This Agreement and the Schedules annexed hereto (a)

shall be governed by and construed in accordance with the laws of the State of New York and to

the extent applicable, the Federal law of the United States (b) shall be given a fair and reasonable

construction in accordance with the intentions of the parties hereto. For purposes of construction

of this Agreement, provisions which are deleted or crossed out shall be treated as if never

included herein.

32.    No Offer.  This document is not an offer by Seller, and under no

circumstances shall this Agreement have any binding effect upon  Purchaser or Seller unless and

until Purchaser and  Seller shall each have executed the same a delivered executed counterparts

hereof to each other, and Bankruptcy Court approval and order approving this Agreement is

obtained.

33.    Severability. If any provision of this Agreement is invalid or

unenforceable as against any person or under certain circumstances, the remainder of this

Agreement and the applicability of such provision to other persons or circumstances shall not be

affected thereby. Each provision of this Agreement shall be valid and enforceable to the fullest

extent permitted by law.

34.    Counterparts. This Agreement may be executed in two or more

counterparts, each of which shall constitute an original but all of which, taken together, shall

constitute but one and the same instrument.

35.    No Third Party Beneficiaries.  The warranties, representations, agreements

and undertakings contained herein shall not be deemed to have been made for the benefit of any

person or entity other than the parties hereto.

36.    Publicity; Confidentiality. From and after the date hereof and continuing

after the Closing Date, (i) Purchaser shall treat all information disclosed to or otherwise obtained

8

by Purchaser in connection with its review of the Premises and the transaction in a confidential manner, and shall not disclose any such information to any third party except as set forth below; and (ii) neither Purchaser nor Seller shall announce or disclose publicly the terms or provisions hereof  without the prior written approval of the other party, except as may be required to comply with orders of the Bankruptcy Court and to obtain Bankruptcy Court approval. Notwithstanding the foregoing, such disclosure shall be permissible (x) if required by American judicial law, (y) with respect to any information that shall be or become available to the general public or (z) by either party to its attorneys, accountants, permitted successors or assigns, lenders, financial advisors or any other advisor or consultant, provided that such parties are apprised of the foregoing restrictions and agree in writing to abide by them. Upon any termination of this Agreement, Purchaser shall cause its employees, contractors and agents to, deliver to Seller all property, documents, written studies and other materials relating to the Premises in such party's possession.

37.     No Waiver. No failure or delay of either party in the exercise of any right given to such party hereunder or the waiver by any party of any condition hereunder for its benefit (unless the time specified herein for exercise of such right, or satisfaction of such condition, has expired) shall constitute a waiver of any other or further right nor shall any single or partial exercise of any right preclude any other or further exercise thereof or any other right. The waiver of any breach hereunder shall not be deemed to be waiver of any other or any subsequent breach hereof.

38.     Successors and Assigns. This Agreement is binding upon, and shall inure to the benefit of the parties and their respective successors and permitted assigns.

9

39.     Waiver of Right to Trial By Jury.  Both the Purchaser and Seller hereby irrevocably waive all right to trial by jury in any action, proceeding or counterclaim arising out of or relating to this Agreement.

40.     Court Approval.  It is understood that this transaction and the parties' obligations hereunder are subject to approval by the United States Bankruptcy Court.  At Closing Purchaser shall pay any NYC and NYS transfer taxes if same are due, and all title charges and fees.

41.     It is the specific intent of the parties that this sale is a "net sale" by Seller to Purchaser of all of Seller's  right, title and interest in real property commonly known as 12 Seacrest Drive Huntington, New York.

42.     Escrow Provisions. The Down Payment shall be delivered to Backenroth Frankel & Krinsky, LLP ("Escrowee") and shall be held in escrow and not in trust by Escrowee in a non-interest bearing IOLA account. Escrowee shall pay the Down Payment to Purchaser or Seller, as applicable, at the Closing or otherwise in accordance with this Agreement. The parties further agree that:

(a)     Escrowee shall be protected in relying upon the accuracy, acting in reliance upon the contents, and assuming the genuineness, of any notice, demand, certificate, signature, instrument or other  document which is given to Escrowee verifying the truth or accuracy of any such notice, demand, certificate, signature, instrument or other document;

(b)     Escrowee shall not be bound in any way by any other contract or understanding between the parties hereto, whether or not Escrowee has knowledge thereof or consents thereto unless such consent is given in writing;

(c)     Escrowee's sole duty and responsibility shall be to hold and disburse the Down Payment in accordance with this Agreement; provided, however, that Escrowee shall have no responsibility for the clearing or collection of any checks comprising any portion of the  Down Payment;

(d)     Upon the disbursement of the Down Payment in accordance with  this Agreement, Escrowee shall be relieved released from any liability under this Agreement;

(e)     Escrowee is herewith indemnified by Seller and Purchaser against any liabilities, damages, losses, costs or expenses incurred by, or claims or charges made against Escrowee (including attorneys' fees and court costs) by reason of Escrowee's acting or failing to act in connection with any of the matters contemplated by this Agreement or in carrying out the terms of this Agreement, except as a result of Escrowee's gross negligence or willful misconduct;

(f)     In the event that a dispute shall arise in connection with this Agreement, or as to the rights of any of the parties in and to, or the disposition of, the Down Payment, Escrowee shall have the right  to (i) hold and retain all or any part of the Down Payment until such dispute is settled or finally determined by litigation, arbitration or otherwise, or (ii) deposit  the Down Payment in an  appropriate court of law, or (iii) institute an action in interpleader or other similar action permitted by stakeholders in the State of New York, or (iv) interplead any of the parties in any action or proceeding which may be brought to determine the  rights of the parties to all or any part of the Down Payment, following which Escrowee shall thereby and thereafter be relieved and released from any liability or obligation  under  this Agreement;

(g)     Escrowee shall not have any liability or obligation for loss of all or any portion of the Down Payment by reason of the insolvency or failure of the institution of depository with whom the escrow account  is  maintained; and

(h)     The parties hereto represent that prior to the negotiation and execution of this Agreement they were advised that Escrowee represents Seller as attorney in connection with this Agreement and the transaction referred to herein and the parties hereto covenant that they shall not object,  on the grounds of conflict of interest or otherwise, to Escrowee continuing to act as Seller's attorney in connection with this Agreement and the transaction contemplated herein, or to act as Seller's attorney in connection with any

11

dispute in connection herewith or any other matter,  as well as act as Escrowee hereunder.


IN WITNESS WHEREOF, the parties hereto have duly executed this Agreement on the day and year first above written.


SELLER

Seacrest Equities LLC

By: _____
　　Name:
　　Title:


PURCHASER

_____


By: _____
　　Name:
　　Title:

ESCROWEE

_____

# EXHIBIT B TO DISCLOSURE STATEMENT
## ASSETS AND LIABILITIES

| Assets | |
|---|---|
| Real Property and misc. personal property | $1,500,000 |

| Liabilities | |
|---|---|
| Suffolk County real estate tax Liens. | $0.00 |
| Secured Claims | $4,433,429 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | $108,500 |
| Interest Holders | -0- |
| **Total** | $4,441,929 |

# CHAPTER 7 LIQUIDATION ANALYSIS

| Assets | |
|---|---|
| Real Property and misc. personal property | $1,500,000 |

| Liabilities | |
|---|---|
| Administration Claims | $225,000 |
| Suffolk County real estate tax Liens. | $0.00 |
| Secured Claims | 1,275,000 |
| Priority Claims under Sections 507(a)(2),(3),(4),(5),(6), and (7) of the Bankruptcy Code. | 0 |
| General Unsecured Claims | -0- |
| Interest Holders | $1,500,000 |
| **Total** | $1,500,000 |

Note: All claim amounts subject to objection.